**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAMZI AHMED YOUSEF,

        Plaintiff-Appellant,

    v.

JANET RENO, Attorney General of
the United States, individually and in
her official capacity; KATHLEEN
HAWK SAWYER, Director of the
Federal Bureau of Prisons,
individually and in her official
capacity; JOHN M. HURLEY, Warden
of F.C.I. Administrative Maximum,
Florence, Colorado, individually and
in his official capacity,

        Defendants-Appellees.

No. 99-1504

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 98-D-2008)**

---

Steven Z. Legon, Esq., New York, New York (Bernard V. Kleinman, Esq., West
Harrison, New York, with him on the briefs), for appellant.

Peter R. Maier, United States Department of Justice, Washington, D.C., (David
W. Ogden, Assistant Attorney General, Washington, D.C., Tom Strickland, United
States Attorney, Denver Colorado, and Barbara L. Herwig, United States
Department of Justice, Washington, D.C., with him on the briefs), for appellees.

Before **HENRY** , and **MURPHY,**  Circuit Judges and   **VAN BEBBER,**  District Judge. *

_____

**HENRY** , Circuit Judge.

_____

Mr. Ramzi Ahmed Yousef, a prisoner in Florence, Colorado's maximum security prison ("ADX"), appeals the district court's dismissal without prejudice of his claims for declaratory and injunctive relief brought pursuant to        <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>     , 403 U.S. 388 (1971). [1]  The district court adopted the report and recommendation of the magistrate judge, who determined that Mr. Yousef had not exhausted the statutorily mandated administrative remedies.  For the reasons set forth below, we affirm.

_____

* The Honorable G. Thomas Van Bebber, United States District Judge for the District of Kansas, sitting by designation.

[1] The district court retained jurisdiction over Mr. Yousef's claims for monetary relief, pursuant to our decisions in <u>Miller v. Menghini</u>, 213 F.3d 1244, 1245-46 (10th Cir.), <u>cert</u>. <u>denied</u>, 530 U.S. 1227 (2000), and <u>Garrett v. Hawk</u>, 127 F.3d 1263, 1267 (10th Cir. 1997).  Pursuant to the Supreme Court's decision in <u>Booth v. Churner</u>, No. 99-1964, 2001 WL 567712, at *5 (May 29, 2001), the holdings of both <u>Miller</u> and <u>Garrett</u> with respect to jurisdiction over an inmate's claims for monetary relief, are no longer applicable. In light of the Supreme Court's holding in <u>Booth</u> that an inmate must exhaust the prison administrative grievance process before resorting to federal court, we will remand the case to the district court with instructions to dismiss Mr. Yousef's claims for monetary relief without prejudice.

## I. BACKGROUND

On January 8, 1997, following his convictions for conspiracy to blow up aircraft owned by U.S. carriers and for participation in the World Trade Center complex bombing, Mr. Yousef was sentenced to life plus 240 years incarceration at a maximum security institution, as well as fines and restitution of more than $250 million. Upon his arrival at ADX in January 1998, Mr. Yousef was placed into administrative segregation in an isolated soundproof cell.

Because of Mr. Yousef's association with terrorist activities, the Attorney General authorized the Bureau of Prisons ("BOP") to implement "special administrative measures" ("SAMs"), to protect Mr. Yousef, other prisoners, and prison personnel from the risk of death or serious bodily injury. See Bureau of Prisons Regulations, 28 C.F.R. § 501.3. On March 31, 1998, the BOP implemented various SAMs pursuant to § 501.3. It restricted Mr. Yousef's access to mail, telephone, media, and visitors and limited his carrying of religious materials, recreation, and exercise time.

Mr. Yousef filed both an informal and a formal application seeking review of the SAMs, both of which were denied. He then filed this Bivens action in federal district court, alleging that the SAMs and other conditions of his confinement violated his right to due process, his Eighth Amendment right to be free from cruel and unusual punishment, his Sixth Amendment right to counsel,

-3-

his First Amendment right to the free exercise of his religion, and his First Amendment right to freedom of speech. Initially, Mr. Yousef sought only declaratory and injunctive relief. However, he later amended his complaint to seek relief for monetary damages.

In response, the Attorney General filed a motion to dismiss, contending Mr. Yousef had not exhausted his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) ("no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted "administrative remedies as are available"). Specifically, the Attorney General argued that the exhaustion duty imposed by § 1997e(a) applies to any suit involving claims for both monetary and non-monetary relief.

In his report and recommendation, the magistrate judge agreed as to Mr. Yousef's failure to exhaust administrative remedies pertaining to declaratory and injunctive relief. He noted that, under Tenth Circuit precedent, which predated the Supreme Court's decision in Booth v. Churner, No. 99-1964, 2001 WL 567712 (May 29, 2001), a prisoner who seeks only money damages lacks an available remedy under the BOP's grievance system before bringing an action under federal law. See Garrett, 127 F.3d at 1267 (stating that "until an administrative remedy is provided for Bivens claims for monetary damages, we must conclude that no exhaustion of administrative remedies is required under

PLRA in this case because no such remedies exist to be exhausted"). But because Mr. Yousef sought declaratory and injunctive relief as well as damages, he concluded that § 1997e(a) required exhaustion of the BOP's grievance system before he could bring an action for non-monetary relief. The district court adopted the magistrate judge's report and recommendation, and retained jurisdiction over the claims seeking monetary damages.

On appeal, Mr. Yousef argues that he did not exhaust these remedies because such remedies were effectively unavailable. Specifically, he maintains that: (1) there were no administrative remedies available to him; (2) under our case law, the exhaustion of administrative remedies is not required; (3) his letter to the Attorney General fulfilled any remaining exhaustion requirements, and (4) his initial attempts to seek relief obviated the need to exhaust remaining administrative remedies.

## II. INITIAL MATTERS

### A. Jurisdiction

Both parties contend that we have jurisdiction over this appeal under 28 U.S.C. § 1291, which provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." Under § 1291, an order denying a motion to dismiss is not a final

appealable order if it "ensures that litigation will continue in the District Court." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 275 (1988). However, there is a "'small class' of decisions that are appealable under § 1291 even though they do not terminate the underlying litigation." Id. (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)) (setting out the requirements of the collateral order doctrine).

In particular, an order that does not finally resolve a case is appealable under the collateral order doctrine when it: (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. See id. at 546; Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867-68 (1994) ("We have accordingly described the conditions for collateral order appeal as stringent."); Gulfstream Aerospace Corp., 485 U.S. at 276; Osage Tribal Council v. United States Dep't of Labor, 187 F.3d 1174, 1179 (10th Cir. 1999) ("In limited circumstances, the collateral order doctrine allows interlocutory appeal of an order that does not actually end the litigation.").

In our recent decision in Miller, 213 F.3d 1245-46, we directed the district court to retain jurisdiction over a Bivens claims seeking monetary damages.[2]

---

[2] As noted above, the Supreme Court has recently concluded that an inmate must exhaust administrative grievance mechanisms even if he asserts only claims

(continued...)

However, we affirmed the court's dismissal without prejudice of the unexhausted claims seeking declaratory and injunctive relief.

In Johnson v. Texas, 878 F.2d 904 (5th Cir. 1989), the Fifth Circuit examined an analogous situation. The district court held the plaintiff's § 1983 action in abeyance pending exhaustion of his state habeas corpus remedies. The plaintiff had alleged he had been falsely imprisoned by the defendants, that he had been reindicted on a charge that had been dismissed for a speedy trial violation, and that the state had used perjured testimony against him. The court stated:

> The disputed question is whether the claims made in the § 1983 suit are claims which must be first made the subject of habeas corpus proceedings and the exhaustion of state remedies in those proceedings. The court conclusively determined that issue by holding that the § 1983 claims were subject to the exhaustion requirement. Next, the court resolved an important issue which was completely separate from the merits of the action because the habeas corpus claims are entirely separate claims in the contemplation of law from the civil rights claims based upon the same alleged misconduct of the public officials. Finally, the issue is obviously effectively unreviewable on appeal from a final judgment because once Johnson goes through the requirement of exhausting his state remedies by way of habeas corpus, the issue whether he was required to do so or not will be moot.

Id. at 905 (emphasis supplied). The court held that, because the plaintiff had "no alternative but to proceed to exhaust state remedies without further recourse to the

---

[2](...continued)
for money damages. See Booth, 1997 WL 567712, at *5. Thus, the retention of jurisdiction over damages claims, as in Miller, is no longer appropriate.

district court before those remedies were exhausted," the order was appealable. Id. at 906.

Similarly in this case, the district court's dismissal without prejudice and stay of the claim for monetary relief disposed of the injunctive and declaratory claims until the exhaustion of Mr. Yousef's administrative remedies. See id. The district court's order places Mr. Yousef in the same position as though the entire action had been dismissed without prejudice. Cf. id. at 906 (noting that "[w]hile the district court's order in this case is not an obvious final judgment as is a dismissal without prejudice, it placed Johnson in the same situation as if there had been dismissal without prejudice in that he could not return to federal court with his § 1983 claims until he had exhausted state remedies as ordered by the district court.").

Accordingly, we conclude that we have jurisdiction to consider this appeal. The district court's order clearly determined that Mr. Yousef was required to exhaust the remedies provided by the BOP's Administrative Remedies Program. The resolution of this issue is separate and distinct from the validity of the regulations and their application to Mr. Yousef, and the issue of whether exhaustion is required would be unreviewable on appeal from the final judgment. See id.; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 11 (1983) (finding jurisdiction to consider appeal of denial of arbitration pending

disposition of a state action and stating "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits").

**B. Standard of Review**

We review the grant of a Rule 12(b)(6) motion to dismiss de novo, applying the same standard as the district court. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir.1999). "We accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Ramirez v. Dep't of Corrections, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**C. Special Administrative Measures**

To begin, some background on the relatively infrequent use of SAMs is instructive. The Attorney General, through the BOP regulations, has delegated his plenary authority over the management of federal prisons. See 18 U.S.C. §§ 4001(b), 4042. For prisoners convicted of terrorist activities, SAMs are

authorized if the Attorney General or the head of a federal law enforcement or intelligence agency determines "that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons," 28 C.F.R. 501.3(a). These "may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism." Id. However, these restrictions may be imposed only in 120-day increments. Before these restrictions can be reimposed, the warden must conduct the risk assessment afresh. United States v. Johnson, 223 F.3d 665, 672 (7th Cir. 2000), petition for cert. filed, (U.S. Feb. 9, 2001) (No. 00-8520); 28 C.F.R. § 501.3(c).

> The limitations in these regulations imply that the Bureau of Prisons could not assign a prisoner directly upon his admission to the federal prison system to spend the rest of his life in the control unit without the possibility of reconsideration. The regulation requiring the bureau to review an inmate's' control unit status "at least once every 60 to 90 days . . . to determine the inmate's readiness for release from the [Control] Unit," 28 C.F.R. § 541.49(d), points in the same direction.

Johnson, 223 F.3d at 672.

These limitations also suggest that the administrative measures are subject to challenge by the prisoner. However, under the PLRA, "no action shall be

-10-

brought" by a prisoner under any federal law until the prisoner has exhausted "administrative remedies as are available." 28 U.S.C. § 1997e(a).

Under the BOP regulations, an inmate must first complete an informal resolution of his complaint. See 28 C.F.R. § 542.13. The regulations permit an inmate to then "seek formal review [from the Warden] of an issue which relates to any aspect of [his] confinement." Id. § 542.10; see id. § 542.14. An inmate who is not satisfied with the Warden's response may appeal his complaint to the BOP's Regional Director. See id. § 542.15(a). "Finally, the inmate may appeal his case to the General Counsel in the Central Office of the Bureau of Prisons, which is the 'final administrative appeal.'" Garrett v. Hawk, 127 F.3d 1163, 1266 (10th Cir. 1997) (quoting 28 C.F.R. § 542.15(a) (1997)), overruled on other grounds by Booth, 2001 WL 567712.

### III. CHALLENGES TO THE SAMS

The Attorney General maintains that Mr. Yousef failed to exhaust his administrative remedies as required by the PLRA. In response, Mr. Yousef raises four closely related arguments in support of his contention that administrative remedies were effectively unavailable and therefore no exhaustion was required: (1) there were no administrative remedies against the BOP available to him because only the Attorney General may impose SAMs; (2) under our holding in

Garrett , exhaustion of administrative remedies is not required; (3) Mr. Yousef's letter to the Attorney General fulfilled any remaining exhaustion requirements and (4) Mr. Yousef's informal and formal petitions and the responses thereto obviated the need to exhaust remaining administrative remedies.  We consider each contention in turn.

**A. The Availability of Administrative Remedies**

First, Mr. Yousef contends that the BOP was only authorized to implement specific SAMs when directed to do so by the Attorney General.  Because the BOP lacked discretion to provide remedies on its own, Mr. Yousef maintains, exhaustion was not required.

We agree with the magistrate judge that the BOP regulations provide an avenue for inmates to exhaust their administrative remedies:  an "inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 C.F.R. part 542."  28 C.F.R. § 501.3(d).

As to the suggestion that the BOP is without power to implement or execute SAMs, the pertinent regulation provides:

> (a) Upon direction of the Attorney General, the Director, Bureau of Prisons,  **may authorize**  the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury. . . . These procedures

may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General.

28 C.F.R. § 501.3(a) (emphasis added). Mr. Yousef contends that the use of the word "may" in practice means "must": upon direction by the Attorney General to implement SAMs, the BOP has no choice but to comply. On the other hand, the BOP may not issue SAMs if not so directed by the Attorney General.

The government emphasizes that the BOP retains discretion as to whether or not to implement the SAMs and as to how to execute them. According to the government, this discretion allows the BOP to better tailor its measures to the requirements of each particular case. The government's argument is supported by the BOP regulations, which state that "'May' means a discretionary right, privilege, or power is conferred." 28 C.F.R. § 500.1(f). In addition, the discretion is given to only two actors: to the Director of the BOP or the Acting Director, and cannot be further delegated. See id. § 501.3(c). The Attorney General's directive is thus a necessary but not sufficient precursor to the implementation of the SAMs.

We see no reason to diverge from the clear language of the regulation, and hold that the BOP has the discretion to implement SAMs. In order to protect against serious bodily injury, the BOP must be able to tailor the measures on an individual basis. Affording the BOP such discretion also allows it to reassess the restrictions and confirm that the circumstances identified in the original

-13-

notification continue to exist.  We therefore conclude that Mr. Yousef's contention that § 501.3 confers no discretionary powers upon the BOP  is without merit.

**B. The Exhaustion of Administrative Remedies Requirement**

Next, Mr. Yousef contends that pursuant to our holding in        <u>Garrett</u>, 127 F.3d at 1267, he is not required to exhaust any administrative remedies before seeking relief in federal court.  We stated in      <u>Garrett</u> that "a prisoner can only exhaust administrative remedies that are actually available."          <u>Id.</u>  We further concluded that, as to claims for monetary relief, there were no administrative remedies for the plaintiff prisoner to exhaust under the PLRA.  Mr. Yousef maintains that, because the BOP is powerless to address his complaints, there are no available remedies for him to exhaust.

The Supreme Court's holding in     <u>Booth</u>  forecloses Mr. Yousef's argument. In <u>Booth</u>, the Court concluded that § 1997e(a) mandates exhaustion "regardless of the relief offered through administrative procedures."        <u>Booth</u>, 2001 WL 567712, at *5.  Furthermore, the Court rejected Mr. Yousef's suggestion that a futility exception should relieve him of the need to apply to an agency that allegedly has no power to decree relief:  "we stress the point . . . that we will not read futility or

-14-

other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at *5 n.6.

## C. Fulfillment of the Exhaustion Requirement

Mr. Yousef next contends that, if exhaustion was required, his counsel's letter to the Attorney General, or the Assistant Attorney General's ("AAG") response, fulfilled this requirement. The AAG's response explained the rationale for each SAM, and closed by noting: "I trust that this response will answer your questions in regard to the imposition of SAM. Should you require further clarification, please feel free to contact my office." Aplt's App. Att. C at 7 n.1 (Magistrate Judge's Recommendation on Motion to Dismiss, filed March 30, 1999). Mr. Yousef suggests that the AAG's closing, which makes no reference to the BOP Administrative Remedy Program, foreclosed the possibility of Mr Yousef's obtaining non-judicial administrative relief.

We disagree. The AAG's response had no impact upon the requirement that Mr. Yousef exhaust his administrative remedies before seeking judicial relief. And, as the magistrate judge noted, Mr. Yousef provides no authority for his assertion "that the AAG should have advised plaintiff of the need to follow BOP administrative procedures." Aplt's App. C (Recommendation on Defendant's Motion to Dismiss) at 7.

**D. Frustration of Mr. Yousef's Ability to Exhaust**

Finally, Mr. Yousef contends that his filing of an informal complaint, and a formal petition, combined with the BOP's responses, pursuant to § 524.14, obviated the exhaustion requirement. He does not, and clearly could not, maintain that he exhausted the administrative remedies provided in § 542.15(a) (specifying required appeal to the Regional Director and "final administrative appeal" to the General Counsel). Instead, he avers the response to his Informal Resolution frustrated his ability to proceed with his administrative remedies:

> This is in response to an Informal Resolution you submitted February 19, 1999, objecting to the <u>legality and fairness</u> of the Special Administrative Measures, which are to be implemented during your confinement. This issue has been reviewed by your Unit Team, it has been determined that this <u>institution has no jurisdiction in this matter</u> as the Special Administrative Measures were issued from the Attorney General's Office.

Aplt's Br. at 19 (quoting Informal Resolution Staff Response, dated February 23, 1999 (emphasis supplied)).

Because the BOP disclaimed having any jurisdiction to review his formal complaint challenging the "legality and fairness" of the regulations, Mr. Yousef argues there was "no remedy available to him." Aplt's Br. at 16. We agree that the wording of this response is misleading, because it does not suggest that the BOP is empowered to review challenges to the fairness of individual SAMs. Mr. Yousef states that his "primary claim" is a challenge to the constitutionality of the

-16-

SAMs, Aplt's Br. at 24, and "to force him to an administrative procedure would serve no purpose as [the BOP has] no mechanism to even rule on such a claim." Id.

In response, the Attorney General explains that the BOP is powerless to review the legality *and* fairness of the SAMs or the overall authority of the Department of Justice regulations. The BOP disclaimed jurisdiction because a challenge to only the "legality and fairness" of the SAMs suggested the overall invalidity of the regulations, to which the BOP could not speak. [3]

However, as to the "fairness" of the SAMs, the Attorney General emphasizes that the BOP can and does evaluate the merits of individual constitutional challenges and may modify particular conditions of an inmate's confinement. We agree: the Administrative Remedy Program may address fairness grievances that do not implicate the general invalidity of the SAMs, such as Mr. Yousef's challenges to limitations on exercise time, to limitations on non-English communications, and to restrictions on his carrying of religious materials into an exercise area.

---

[3] At oral argument, counsel for the Attorney General was asked to describe the formal application (a "Form BP-9" petition), see 28 C.F.R. 542.14, and the instructions given to an applicant. Counsel confirmed that the instructions do not indicate the specificity with which a pro se applicant must describe his or her grievances. In order to avoid future confusion, we suggest the Attorney General consider providing pro se applicants more direction in the form application.

As the Attorney General has also concluded, the BOP is authorized to rule on challenges to specific SAMs. Thus, despite the BOP's inability to address challenges to the SAM's overall validity, Mr. Yousef was required to exhaust all of his administrative remedies before seeking judicial consideration of his claims.

## III. CONCLUSION

We AFFIRM the dismissal of Mr. Yousef's claim for injunctive and declaratory relief. In light of the Supreme Court's recent decision in <u>Booth</u>, we REMAND the case to the district court with instructions to dismiss Mr. Yousef's claims for monetary relief without prejudice to allow for exhaustion of his administrative remedies.