Otis BROCK, Plaintiff–Appellant,

v.

KENTON COUNTY, KY; Don Younger, Kenton County Jailer; Rodney "Biz" Cain, Judge Executive; Steve Arlinghaus, Kenton County Commissioner; Bernie Moorman, Kenton County Commisioner; Kimberly Mains; Robert McNay; Kel Clifton; Dave Hoyte; John Doe, One through ten whose identities are presently unknown; Terry Carl, Kenton County Jailer; Richard Murgatoyd, Judge Executive; Adam Koenig; Kenton County Commissioner; Daniel Humpert; Kenton County Commissioner, Defendants–Appellees.

No. 02–5442.

United States Court of Appeals,
Sixth Circuit.

March 23, 2004.

Robert B. Newman, Lisa T. Meeks, Newman & Meeks, Cincinnati, OH, for Plaintiff–Appellant.

Brandon N. Voelker, Edmondson & Calvert, John Clyde Middleton, Middleton & Middleton, MaryAnn Stewart, Adams, Stepner, Woltermann & Dusing, Covington, KY, for Defendant–Appellee.

Before: SUHRHEINRICH, CLAY, Circuit Judges; and GWIN, District Judge.*

SUHRHEINRICH, Circuit Judge.

Plaintiff Otis Brock, an inmate in the Kentucky penal system, appeals from the order of the district court dismissing his 42 U.S.C. § 1983 action for failing to exhaust administrative remedies, as required by the Prison Litigation Reform Act, 42

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

U.S.C. § 1997e(a) ("PLRA"). For the reasons that follow, we AFFIRM the judgment of the district court.

## I.

Because the district court granted the defendants' motions to dismiss, we accept as true the allegations stated in the complaint. *See generally* Fed.R.Civ.P. 12(b)(6). In December 1998, while incarcerated in the juvenile wing of the Kenton County Detention Center, Brock was caught passing cigarettes to another juvenile offender across the hall. Brock was ordered to move to another isolation cell but refused. Defendants deputy jailers Kimberly Mains, Robert McNay, Kel Clifton, and Dave Hoyte entered Brock's cell in order to remove him. Defendants handcuffed and subdued him. Brock claims that, after he was handcuffed, these Defendants nevertheless hit him and used a stun gun on him. He further alleges that Defendant McNay grabbed him by the testicles and marched him down the hall to an isolation cell.

Immediately after the assault, Plaintiff contacted Kim Brooks, the Executive Director of the Children's Law Center.[1] Brooks and another attorney from the Children's Law Center, Mike Williams, met with Brock and interviewed him. Brooks then contacted and met with officials from the Federal Bureau of Investigations, the Kentucky State Police, the Kentucky Department of Juvenile Justice, and Terry Carl.[2]

Based on Brooks's information, the Department of Juvenile Justice immediately initiated its own investigation into the allegations. As a result, the Department of Juvenile Justice placed a monitor at the Kenton County Jail to monitor the juvenile section twenty-four hours a day until the new jailer took charge of the facility. After Carl assumed office, Brooks participated in several meetings with Carl and Dick Murgatoyd, the newly elected Kenton County Judge Executive. Brock's allegations were discussed.

It is undisputed that Brock did not file an administrative grievance with the Kenton County Detention Center over this incident.

Approximately two weeks after the incident, Brock was transferred to another correctional facility. Brock contends that he did not file a grievance because he never received any information on how to file a grievance while at the Kenton County Jail and was not advised that a grievance process existed there.

On December 9, 1999, Brock filed a complaint against Kenton County, Kentucky; former Jailer Don Younger; former Judge Executive Rodney Cain; former Kenton County Commissioners Steve Arlinghaus, Nioka Johnston, and Bernie Moorman; Deputy Jailers Main, McNay, Clifton, and Hoyte; John Does One through Ten; current Jailer Carl; current Judge Executive Murgatoyd; and current Kenton County Commissioners Adam Keonig, Barbara Black, and Daniel Humpert (hereinafter "Defendant Younger and Kenton County Defendants").[3] Brock alleged that his Eighth Amendment rights were violated by the defendants' actions. The complaint did not allege that Brock exhausted his

---

1. Brook was at the time representing juvenile inmates in a class action lawsuit, brought under 42 U.S.C. § 1983, challenging the living conditions and treatment of juveniles in the Kenton County Detention Center.

2. Terry Carl had recently defeated Defendant Don Younger, in an election, but had not yet taken office.

3. Defendant Younger filed a separate motion to dismiss and a separate brief on appeal.

administrative remedies within the jail prior to filing the lawsuit. Nor did Brock claim that administrative remedies were unavailable.

On February 10, 2000, Defendant Younger and the Kenton County Defendants filed their respective answers. In his answer, Defendant Younger asserted as an affirmative defense that "Plaintiff's claims asserted in the Complaint are barred by the Prison Litigation Reform Act." The Kenton County Defendants did not raise a similar defense.

On August 6, 2000, Defendant Younger, Carl, Cain, Murgatoyd, Arlinghaus, Johnston, Moorman, Koenig, Black, and Humpert were dismissed in their official capacities by agreed order. This order effectively dismissed Defendants Carl, Murgatoyd, Koenig, Black, and Humpert entirely from the suit.

On August 10, 2001, the Kenton County Defendants filed a motion to dismiss. Attached to the motion is the affidavit of Defendant Jailer Younger, who stated that during Brock's incarceration the Kenton County Jail had an established grievance procedure for resolving inmate grievances.[4]

Brock responded, arguing that the Kenton County Defendants had waived the exhaustion requirement, that Brock had substantially complied with the exhaustion requirement, and the jail did not have an available administrative remedy. Brock also moved the court to strike paragraph 9 of Younger's affidavit, as contradicting Younger's deposition testimony.

The parties agreed to have the matter referred to the magistrate judge to resolve the matter on the merits pursuant to 28 U.S.C. § 636(c)(1). On March 28, 2002, the magistrate judge granted Defendants' motions and dismissed Brock's complaint without prejudice. The magistrate judge found that Brock failed to exhaust the jail's administrative remedies as required by the PLRA. Brock timely appealed.

## II.

We review *de novo* the district court's dismissal of a suit for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a). *Curry v. Scott,* 249 F.3d 493, 503 (6th Cir.2001).

## III.

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under § 1997e(a), a prisoner must exhaust all of his available administrative remedies before filing a § 1983 action in federal court. *Brown v. Toombs,* 139 F.3d 1102, 1103–04

---

4. Younger described the procedure as follows:

6. That this grievance procedure was in writing and was a part of the policy and procedure manual which was in effect and utilized in the operation of the Kenton County Jail at the time.

7. The grievance procedure involved several steps: any juvenile inmate with a grievance was permitted to submit his or her grievance, on a written form provided by the Jail, to a *deputy.* If the grievance could not be settled at that level, the matter would be taken up by the chief deputy. If this could not bring about a resolution to the problem or claim, the matter was brought to the Affiant, in his capacity as Jailer.

8. If no result or satisfact[ory] resolution of the claim could be made after it reached the third level, the Jailer, then there was an appeal to the local Department of Facilities.

9. The inmates in the jail were informed of this grievance procedure in the following two ways: (1) they were given a short form of rules upon admission; and (2) they would receive written rules and regulations upon being assigned to a cell.

(6th Cir.1998) (per curiam). That is, under the PLRA, exhaustion of available administrative remedies is a mandatory pre-condition to filing suit in federal court. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Brown,* 139 F.3d at 1104. "In *Brown,* we held that the statutory language in 42 U.S.C. § 1997e(a)-'no action shall be brought until all available administrative remedies are exhausted'-'should be interpreted to mean precisely what is obviously intended-that a federal court not prematurely decide the merits of any such action.'" *Knuckles El v. Toombs,* 215 F.3d 640, 642 (6th Cir.2000) (quoting *Brown,* 139 F.3d at 1104) (footnote omitted). *See also Thomas v. Woolum,* 337 F.3d 720, 725 (6th Cir.2003) ("There is no doubt that under the PLRA, exhaustion by prisoners is mandatory."). Thus, in *Brown,* this Court held that in order to effectuate the language of the statute, a prisoner must plead his claims with specificity and demonstrate that they have been exhausted by attaching a copy of the applicable administrative dispositions, or alternatively describe with specificity the administrative proceedings and its outcome. *Knuckles El,* 215 F.3d at 640; *see also Brown,* 139 F.3d at 1104. This Court has repeatedly and consistently applied this heightened pleading standard to prisoner § 1983 claims. *See, e.g., Brown,* 139 F.3d at 1103–04; *Wyatt v. Leonard,* 193 F.3d 876, 878–79 (6th Cir. 1999); *Knuckles El,* 215 F.3d at 642. It is undisputed that Brock's complaint does not satisfy this standard.

### A.

Brock asserts that he could not comply because no administrative remedy was "available" to juvenile offenders at the Kenton County jail. Brock acknowledges that the Kenton County jail had a grievance system in place, but argues that it was not "available" to him because (1) juvenile inmates were not aware of its existence; (2) it had never been used by any juvenile offender; (3) prison officials never gave Brock any information about the grievance system; and (4) Brock did not, in fact, know that a grievance system existed.

The PLRA does not define "available." The Eighth Circuit has stated that "the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose: immediately utilizable ... accessible.'" *Miller v. Norris,* 247 F.3d 736, 739 (8th Cir.2001) (quoting *Webster's Third New International Dictionary* 150 (1986)).

██ Brock's argument is rejected. Although this Court has not expressly ruled on the point, the Tenth Circuit has rejected the argument that prison officials are required to notify prisoners of available administrative remedies such that any alleged failure of notice excuses the exhaustion requirement. *See Yousef v. Reno,* 254 F.3d 1214, 1221 (10th Cir.2001) (rejecting the prisoner's argument that the Assistant Attorney General was under any duty to advise the prisoner of the need to follow internal Bureau of Prisons administrative procedures, and noting that the prisoner provided no authority for that assertion); *see also Gonzales–Liranza v. Naranjo,* 76 Fed.Appx. 270, 272–73 (10th Cir.2003) (holding that the district court did not err in rejecting the prisoner's claim that his unawareness of the grievances procedure excused the PLRA's exhaustion requirement).

This Court has held that the exhaustion requirement is mandatory, although not jurisdictional, *Curry,* 249 F.3d at 501 n. 2 (summarizing cases), and that the district court does not have discretion to waive

exhaustion because the requirement is not an affirmative defense. *Wyatt*, 193 F.3d at 879. Similarly, the Eighth Circuit has observed:

> Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for "we are not free to engraft upon the statute an exception that Congress did not place there." *Castano v. Nebraska Dep't of Corrections*, 201 F.3d 1023, 1025 (8th Cir.2000).

*Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir.2000) (rejecting the prisoner's argument that exhaustion should be excused because he allegedly relied on the warden's representation that the problem would be remedied).

The cases Brock cites support a different proposition, namely that a grievance procedure is not "available" even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it. *See, e.g., Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir.2003) (holding that prisoner lacked available administrative remedy for exhaustion purposes where the prisoner was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (finding allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that the prisoner had exhausted his "available" administrative remedies); *Arnold v. Goetz*, 245 F.Supp.2d 527, 538–39 (S.D.N.Y.2003) (finding a prisoner who was told that an inmate grievance process existed, but who was frustrated by officials in his attempts to learn how to use it, did not have recourse to an "available" administrative remedy); *Davis v. Milwaukee Co.*, 225 F.Supp.2d 967, 976 (E.D.Wis.2002) (holding that when the record established that the defendants interfered with the inmates ability to exhaust in three ways such grievance procedure might have been "unavailable"). However, as these cases reflect, the prisoner must make some affirmative efforts to comply with the administrative procedure. The procedure becomes "unavailable" because prison officials have somehow thwarted the inmates attempts at exhaustion.

In any event, the district court's dismissal was proper here because Brock failed to address the PLRA exhaustion requirement in his initial complaint. In *Baxter v. Rose*, 305 F.3d 486 (6th Cir.2002), we explained that such heightened pleading standard is required by the PLRA. *Id.* at 488–89 (holding that a prisoner may not amend his complaint to cure a failure to plead exhaustion if his action is covered by the PLRA; reasoning that the heightened pleading standard, effectuates the PLRA's screening requirement).

**B.**

Next, Brock argues that his failure to exhaust administrative remedies should be excused because exhaustion is an affirmative defense and the defendants failed to raise it in their answer.

██ Contrary to Brock's assertion, Younger raised the defense in his answer. In any event, in this Circuit the PLRA's exhaustion requirement is mandatory, and the district court is required to dismiss the case *sua sponte* if the defendants do not raise it. *Baxter*, 305 F.3d at 489; *Knuckles El*, 215 F.3d at 642; *Brown*, 139 F.3d at 1104. It therefore cannot be considered a waivable affirmative defense.

### C.

Brock asks us to expand the "substantial compliance" doctrine due to the mitigating circumstances in this case. Specifically, he asks us to exercise our equitable powers because he was a juvenile housed in a juvenile facility; the evidence suggests that no grievance procedure exists for juvenile offenders; Brock gave the Jail and the County actual notice of the incident; the Kentucky Department of Juvenile Justice conducted an investigation; and Defendant Jailer Younger acknowledged that his practice was to defer to an outside agency's investigation.

■ Again, Brock's argument must be rejected. As we noted in *Wyatt*, under the PLRA, the district court no longer has discretion to waive exhaustion as it did prior to the Act. *Wyatt*, 193 F.3d at 879. We have allowed substantial compliance only in the limited circumstance where the events giving rise to the prisoner's claim occurred prior to the effective date of the PLRA. *Wolff v. Moore*, 199 F.3d 324, 327 (6th Cir.1999); *Wyatt*, 193 F.3d at 879–80. The substantial compliance doctrine is inapplicable here. *See, e.g., Dodson v. Ohio Dep't of Corrections*, No. 99–3521, 2000 WL 799768 (6th Cir. June 14, 2000) (order) (holding that substantial compliance did not apply to excuse the prisoner's failure to exhaust fully administrative remedies because his claims arose after the effective date of the 1996 Act); *Taylor v. Henson*, No. 99–6026, 2000 WL 658667 (6th Cir. May 10, 2000) (order) (same). Finally, this Court has explicitly held that the use of outside agencies does not satisfy the PLRA's dictates. *Thomas*, 337 F.3d at 734.

### D.

Lastly, Brock contends that the district court erred in refusing to strike paragraph 9 of Defendant Jailer Younger's affidavit.

Paragraph 9 states that the Jail provided juvenile inmates with notice of the Jail's grievance procedure. Brock argues that this statement contradicts Younger's deposition testimony. However, as the lower court held, the affidavit was not material to its decision. Thus, this claim is moot.

### IV.

For all of the foregoing reasons, the judgment of the district court dismissing Brock's complaint is **AFFIRMED**.