RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LESTER NAPIER,

                *Plaintiff-Appellant,*

       *v.*

LAUREL COUNTY, KENTUCKY; JACK
SIZEMORE, Individually and in his official
capacity as the Laurel County Jailer; JOHN
and JANE DOES, Nos. 1, 2, and 3, Individually
and in their official capacity as medical
professionals, officers and employees of the
Laurel County Detention Center,
                    *Defendants-Appellees.*

No. 09-6239

 

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 06-00368—Amul R. Thapar, District Judge.

Argued: October 20, 2010

Decided and Filed: February 9, 2011

Before: MARTIN and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Andrew J. Horne, ANDERSON & HORNE PLLC, Louisville, Kentucky, for Appellants. Leslie Patterson Vose, LANDRUM & SHOUSE, LLP, Lexington, Kentucky, for Appellees. **ON BRIEF:** Andrew J. Horne, ANDERSON & HORNE PLLC, Louisville, Kentucky, Gregory A. Belzley, Prospect, Kentucky, for Appellants. Leslie Patterson Vose, Bradley C. Hooks, LANDRUM & SHOUSE, LLP, Lexington, Kentucky, for Appellees.

    McKEAGUE, J., delivered the opinion of the court, in which LUDINGTON, District Judge, joined. MARTIN, J. (pp. 12–15), delivered a separate dissenting opinion.

_____

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  This case is a simple application of the exhaustion requirement of the Prison Litigation Reform Act.  Plaintiff Lester Napier contracted an infection of Methicillin-resistant Staphylococcus aureus ("MRSA") while in jail at the Laurel County Detention Center ("LCDC").  After the condition worsened, he was sent to the hospital and had to undergo a surgical scrotectomy.  He spent a week in the hospital, then returned to the jail.  He was in LCDC for at least four days, then was sent to do home care to recover from the surgery.  Several months later, he was again incarcerated in Kentucky, this time in the Marion Adjustment Center ("Marion facility").  Alleging that the LCDC violated his Eighth Amendment rights through its negligence and failure to provide medical care, he filed a claim under 42 U.S.C. § 1983 (2006) in district court (along with state negligence claims).  Because Napier never filed a grievance through the jail's administrative process, as required by the Prisoner Litigation Reform Act ("PLRA"), the district court dismissed the federal claim.  The court also dismissed the state law claims for lack of supplemental jurisdiction, though it acknowledged that he could pursue those claims in state court. Napier now appeals the court's judgment, arguing that he was not required to exhaust LCDC's administrative process because no remedy was available to him when he filed his suit.

Because the government demonstrated that the LCDC remedies were available—both on paper and in practice—and because Napier concedes that he did not even try to exhaust any remedies, we **AFFIRM** the district court's dismissal of his federal claim.

### I.  BACKGROUND

Appellant Lester Napier was incarcerated in the LCDC in August 2005.  When he arrived there, he received an inmate orientation manual that included the grievance procedure at issue in this case. (R. 134, Resp. in Opp'n, Ex. 2: Inmate Handbook Pages.)

The manual also provided LCDC prisoners with a formal process through which they could receive medical attention.

In late 2005, Napier contracted MRSA at the jail; he alleges this was due to the overcrowded conditions and the jail's failure to take steps to meaningfully reduce a known risk of MRSA infection. During his stay, Napier was housed in the medical watch area due to the severity of his several chronic medical problems, and his need for a C-PAP machine, breathing treatments, and multiple daily medications. When the rash began, he received treatment from doctors between October and January, and he testified that he spoke to the medical staff every day. However, the problem was much worse by January. On January 10, 2006, Napier complained about the rash and groin pain, and was taken to see an outside physician about his symptoms. The doctor prescribed an antibiotic, and Napier was sent back to the LCDC. Two days later, he again complained to prison medical staff, this time saying his scrotum was painful and swollen. The nurse treated him with ibuprofen and an ice pack. The following day, he was brought back to the doctor, and was soon transferred to the hospital where he was diagnosed with MRSA, which had developed into scrotal cellulitis with gangrene. Napier underwent a surgical scrotectomy to remedy the issue. He remained in the hospital for a week, and was then transferred back to the LCDC. He remained there for several days, at least four according to his brief. At this time, he was released to receive home healthcare.

Six months later, on July 24, 2006, Napier was once again imprisoned, pursuant to a new state law conviction for being a felon in possession of a firearm. On August 3, 2006, he was transferred to state custody at the Marion facility, a private correctional institution under contract with the state government.

Napier filed the current suit on August 16, 2006, while an inmate at the Marion facility. His claims against LCDC included: 1) violation of his Eighth Amendment rights by failing to provide proper medical care; 2) violation of his Eighth Amendment rights by housing him in unsanitary and overcrowded conditions; 3) willfully violating his rights under Kentucky law; 3) intentional infliction of emotional distress; and 5) negligence and gross negligence.

In July 2009, the district court granted LCDC's motion for summary judgment with respect to Napier's federal claims, and dismissed his state law claims without prejudice. It concluded that by not filing a grievance under LCDC's policy, Napier failed to exhaust all of his available administrative remedies as required under the PLRA. 42 U.S.C. § 1997e(a) (2006).

The sole issue on appeal is whether Napier failed to exhaust all available administrative remedies under the PLRA.[1]  Since Napier does not contend that he exhausted his administrative remedies, the issue is more specifically whether LCDC's grievance policy was "available" to him such that he was required to exhaust it. Napier argues that LCDC's administrative remedies were not available to him when he resided at the Marion facility, and that LCDC failed to explain its grievance policy or the PLRA to him.[2] We conclude that the jail's administrative remedies *were* available to Napier. Therefore, summary judgment was appropriate and we **AFFIRM**.

## II.  ANALYSIS

*The PLRA's Exhaustion Requirement*

Congress enacted the PLRA "in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (internal citations omitted). The law seeks to alleviate the burden of this litigation by requiring prisoners to exhaust all administrative remedies before they can file suit in federal court.  *See* 42  U.S.C.

---

[1]Though Napier was re-incarcerated on different charges, the PLRA still applies to him, as the only question is: "Is the plaintiff a prisoner confined in a jail, prison, or other correctional facility?"*Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003) (applying the Act to a plaintiff who was no longer incarcerated because he was a prisoner when he filed suit).

[2]This argument, too, fails.  A plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy.  *Brock v. Kenton Cty.*, 93 F. App'x 793, 797-98 (6th Cir. 2004) (unpublished); *Castro v. Crawford*, 102 F. App'x 852, 853-54 (5th Cir. 2004) (per curiam); *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001); *see also Molina-Crepso v. United States Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008) ("[E]ven in civil suits, ignorance of the law does not excuse the failure to follow it.").  In any event, any claim that Napier was ignorant of LCDC's grievance process or misunderstood it is unpersuasive.  The grievance policy was distributed to all LCDC prisoners in the inmate orientation manual,  (R.E. at 19, Resp. to Disc. Req.), and he therefore had at least constructive notice of the policy because it was provided to him.  Second, the orientation manual also included how to seek medical assistance, a process which he initiated—successfully—more than once; therefore, he showed subjective awareness of some policies, not to mention that his experience was that jail authorities were responsive to administrative petitions (albeit of a different kind).  Lastly, when asked whether he had filed a formal grievance, Napier admitted that he had not done so; he did not say he was unaware of the policy.

§ 1997a. The "dominant concern" of the PLRA is "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Porter v. Nussle*, 534 U.S. 516, 528 (2002) (making the exhaustion requirement mandatory).

Specifically, the law provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, *Brock v. Kenton County*, 93 F. App'x 793, 798 (6th Cir. 2004); even when the state cannot grant the particular relief requested, *Booth v. Churner*, 532 U.S. 731, 741 (2001); and "even where [the prisoners] believe the procedure to be ineffectual or futile . . . ." *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006).

Because he was clearly a "prisoner" at the time he filed suit, Napier was subject to the PLRA's requirements. And because it applies to a person "in any jail, prison, or other correctional facility," this is true whether he was housed at the LCDC or the Marion facility. The only question is whether the LCDC's grievance procedure was "available" to Napier.

*Availability of an Administrative Remedy*

The applicable portions of LCDC's grievance procedure read:

> POLICY:
> An inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules. (Grievances must be restricted to incidents which occur while the prisoner is in custody of the facility.) . . . .

> PROCEDURE:
> 1. Transmittal: A grievance shall be made in the form of a written statement by the inmate promptly following the incident, sealed in an un-stamped envelope and addressed to the Jailer or his designee such statement shall be transmitted promptly and without interference to the Jailer by a detention officer or staff member to whom the grievance is given.

Napier does not contend that the policy would not have covered him or his claims while in the LCDC. Nor does he contend that he exhausted remedies, to the extent he could. Instead, he argues 1) he need not exhaust because no administrative process at the Marion facility can provide a remedy, and 2) the administrative process at LCDC was not available to him when he filed suit because he was in a different prison.

*Availability of Process at the Marion Adjustment Center*

First, the absence of an administrative process at the Marion facility for Napier's claim is irrelevant if a remedy exists through LCDC. The PLRA requires that a prisoner at "any" jail must exhaust "such administrative remedies as are available." It does not require that the remedies must be available at the very facility where the prisoner is currently located; instead, any "available" remedy must be exhausted, and that includes remedies at Napier's past location.

*Availability of the Process at LCDC*

Second, Napier argues that the grievance procedure at LCDC was no longer available to him after he was imprisoned in a different, private facility. However, he presented no evidence to the district court to support this contention. Generally, "[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion." *Blakey v. Beckstrom*, No. 06-163-HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007);[3] *see also Jackson v. Walker*, No. 6:07-230-DCR, 2007 WL 2344938, at *5-6 (E.D. Ky. Aug. 14, 2007) (finding a policy which simply stated it applied to "all inmates," without contemplating inter-facility grievances, was available).

Inherent in Napier's argument is the idea that where the facility has not expressly provided for inter-facility grievances, the remedy is categorically unavailable. We reject this proposition and hold that a jail's grievance policies need not explicitly provide for all possible scenarios in which a prisoner may seek to file a grievance. Instead, when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy.

If Napier had attempted to follow the letter of the grievance policy, and was unsuccessful, this would be a closer question. Indeed, if he had written his grievance, simply addressed it to the LCDC jailer or his designee (per the policy), and handed it to a guard in his current facility (*and* this had not worked to reach LCDC), he could have argued that he followed the given procedure but that it was no longer meaningfully available to him. He also could have mailed his grievance to see if it was accepted.

But he did nothing. "The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility

---

[3]The dissent contends that this case is distinguishable, because the two facilities "shared policies and practices" and "would easily be prepared to process grievances between each other from transferred prisoners." *Infra* at [13]. However, in *Blakey*, the jail's procedures did not contemplate or authorize inter-facility grievances at all. There is no evidence to suggest that the facilities here are not equally as "prepared to process grievances between each other."

rendered these remedies unavailable.*" Braswell v. Corr. Corp. of Am.*, No. 08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009) (citing *Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004)). Our Court has consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case, the prisoner did *something*. *See Bruce v. Corr. Med. Serv., Inc.*, No. 08-6339, 2010 WL 2842736, at *4 (6th Cir. July 21, 2010) (noting that prisoner attempted to file a grievance and "was told Policy 501.01 would not allow it"); *Flournoy v. Schomig*, 152 F. App'x 535, 537 (7th Cir. 2005) (recognizing that plaintiff had submitted an "emergency grievance" before being transferred, then filed another after transfer); *Rancher v. Franklin Cnty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (excusing the exhaustion requirement because the prisoner had filed a grievance with the jail, contacted prison personnel, and submitted documents from other prisoners stating that the jail had refused to accept medical grievances).

The dissent insists that there is no duty for prisoners to attempt to exhaust when "availability" is even in question, but only when "processes were available" and the issue is "futility." *Infra* at [14]. This suggested dichotomy is false; whether a process is "available" for purposes of the PLRA often turns on whether a grievance procedure is available—on its face—but is actually futile, despite its language. *See Santiago v. Meinsen*, 89 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2000) (addressing the excuse that a prisoner was transferred to a different facility as a "futility argument," and concluding, "Should the plaintiff, however, be rewarded for failing to participate in the grievance procedure by being permitted to bring a federal action without even attempting to resolve his claim administratively? The answer is a decided no."). Prisoners often argue futility precisely because a policy does exist, but they feel it was not actually available to them. *See Brock*, 93 F. App'x at 798 ("[The PLRA] says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." (Internal quotations omitted)).

The dissent summarily concludes that "no processes were available," but another prisoner's experiences demonstrate that they were. Faced with a policy that was not clearly unavailable, the only way to determine if the process was available, or futile, was to try. Here, a process existed, and therefore even according to the dissent, "compliance with those rules . . . is required." *Infra* at [13]; *see Braswell,* 2009 WL 2447614, at *7 (stating clearly that efforts must be made before an analysis of *availability*).

We are not requiring that a prisoner utilize every conceivable channel to grieve their case, but even when a policy is vague, a prisoner must do what *is* required by the grievance policy.[4] "We have clearly held that an inmate does not exhaust available administrative remedies when the inmate entirely fails to invoke the prison's grievance procedure." *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (citing *Hartsfield v. Vidor,* 199 F.3d 305, 308-09 (6th Cir. 1999); *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir. 1998) (per curiam).

Napier was provided the policy at issue, and had successfully filed other types of grievances in the past. Yet he did not file a grievance in this case, either when still housed at the LCDC or when he was later incarcerated at the Marion facility. Notably, when asked why he had not done so, Napier did not say, "I did not have time," "It would have been useless," "I didn't know I had a claim," or "I didn't think I could." He stated that he did not complain to anyone because he did not want to complain or "bother the staff." (R.E. 113, Ex. A, Napier Dep. at 56.) The record seems to indicate that Napier simply chose not file a grievance, and proceeded to file a claim directly in federal court. That is precisely what the PLRA was designed to protect against.

*Summary Judgment*

In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants. *Jones v. Bock*, 549 U.S. 199, 204 (2007); *Vandiver v. Corr. Med. Servs., Inc*., 326 F. App'x 885,

---

[4]Importantly, this is not the same as requiring prisoners to "seek[] a remedy through any reasonable process not expressly prohibited by the jails' remedy policy." Dissent, *infra* at [13].

888 (6th Cir. 2009).  Because the defendants moved for summary judgment on this defense, it was their burden to show that there was an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  But as the district court noted, the jail met this burden.  Nothing in the LCDC policy explicitly prohibits inmates from filing grievances after they have been released from that facility.  In fact, though the text restricts grievances to incidents that *occur* while there, it does not similarly state that a grievance must be *filed* while there, *i.e.*, cannot be pursued by an inmate who is no longer incarcerated at the jail.  Additionally, it is possible for an individual to file a grievance from another facility and comply with the prescribed procedures.[5]

Most powerfully, the defendants submitted evidence that a different prisoner has, in fact, filed a grievance at LCDC while incarcerated elsewhere in the state.  (R. 133.)  While the dissent insists that LCDC's "process would not work anywhere outside the confines of that jail," *infra* at [12], the evidence shows that it did work.  The other prisoner had a claim arising from his stay at LCDC, went to another facility, and successfully filed an LCDC administrative grievance.  It is this exact process that the PLRA required Napier to utilize, but he did not.[6]

Once the defendants put forth evidence, Napier was required to present "significant probative evidence" to defeat the motion for summary judgment on this ground.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  He was required to show "more than a metaphysical doubt as to the existence of a genuine issue of material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, after the jail presented a valid administrative process, assertions that the process was still available to him, and evidence that another prisoner has successfully

---

[5]The district court noted that the inmate could simply place his written statement inside an un-stamped envelope addressed to the jailer, and then place that inside a stamped, addressed envelope.  He also could have followed the policy, and simply handed the unstamped envelope to a "detention officer or staff member" as the policy procedure requires.

[6]It is not clear if the other prisoner filed at the urging of his family, or even Napier's counsel, but it does not matter.  If that is true, the ironic truth is that by his own advice, Napier's counsel provided the needed proof for LCDC, to demonstrate that its grievance policy and remedies remain available after an inmate's transfer.

accessed that process, Napier presented no evidence at all to rebut the availability of that remedy.  *See Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' ") (internal citations omitted). Therefore, defendants met their burden to prove that there was no disputed issue on whether the LCDC remedy was still available, and because Napier did not even attempt to exhaust that remedy, summary judgment was appropriate.

### III.  CONCLUSION

The PLRA's exhaustion requirement is a strict one.  This is not to be harsh on prisoners, but to further the important goals behind the law: to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected, and to create an administrative record for those disputes that eventually end up in court. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

When faced with a grievance policy that did not preclude his claim, Napier was required to take action to exhaust this remedy.  Napier took no steps to attempt to exhaust his administrative remedies, and presented no evidence below indicating that the policy was not actually available to him. Furthermore, the defendants presented evidence 1) demonstrating that it had a policy for grievances like Napier's; 2) asserting that it was still available despite his location; and 3) proving that another prisoner in his situation had successfully filed a grievance under the policy.  Therefore, Napier failed to exhaust the available administrative remedy.  He is still free to pursue his state law claims, but as to his federal claims, we **AFFIRM** the district court's grant of summary judgment.

---

**DISSENT**

---

BOYCE F. MARTIN, JR., Circuit Judge, dissenting.  The majority holds "that a jail's grievance polic[y] need not explicitly provide for all possible scenarios in which a prisoner may seek to file a grievance.  Instead, when a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy." *Supra* at 7.  Because I believe that this holding conflicts with the intent of the Prison Litigation Reform Act and applicable Supreme Court precedent, as well as misapplies the requirement of attempted exhaustion, I respectfully dissent.

The Laurel County Detention Center's administrative policy instructed prisoners to file grievances by handing them to prison staff in envelopes with no postage and addressed simply to "the Jailer or his designee."  This process would not work anywhere outside the confines of that jail, especially for a former prisoner after being transferred to a different facility.  Even if a transferred prisoner wanted to send a grievance through the mail, and had a stamp, envelope, paper, and pen, Laurel County's process does not provide a mailing address.[1]  Therefore, Laurel County's administrative remedies were not available to Napier when he was transferred to the Marion Adjustment Center unless there was some additional process by which he could have filed a grievance with Laurel County through the Marion facility.  However, there was not.  The district court expressly observed in a summary judgment hearing that there was no process at the Marion facility, even on paper, by which Napier could file a grievance with Laurel County.

---

[1] The majority and the district court were reassured in their holdings because one former prisoner of Laurel County successfully mailed a grievance to Laurel County from another facility. *See supra* at 10 & n.5.  When fleshed out, however, this fact only detracts from their holdings.  That former prisoner mailed his grievance only after he received assistance from his family and instructions to do so from Napier's attorney.  Napier's attorney provided this instruction to this non-client only because the district court in Napier's case indicated during a summary judgment hearing that it seemed possible that Napier could have mailed a grievance to comply with Laurel County's policy.  This extraordinary situation illustrates how prisoners of ordinary means in ordinary situations would not have known to mail a grievance or had the ability to do so.

The majority has interpreted availability to require seeking a remedy through any reasonable process not expressly prohibited by a jail's remedy policy. However, the Supreme Court's decisions in *Jones v. Bock*, 549 U.S. 199, 218 (2007), and *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)*,* demand a different result. Individual jails are responsible for developing administrative remedies and making them available to prisoners. *Jones*, 549 U.S. at 218. Prisoners are required to "complete the applicable administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Importantly, compliance with those rules provided by the jails is all that is required to satisfy exhaustion. *Jones*, 549 U.S. at 218. Prisoners have few resources, if any, that are not provided to them by the jails in which they reside. Practically speaking, the only way that compliance can be achieved by men and women who are incarcerated, earn little or no money, and have few or no possessions is if the prison provides them with resources—namely paper, pens, and a delivery system. Therefore, the majority's interpretation employs an impracticable reading of the Act because it potentially requires prisoners to utilize more resources than the jail provides through its policy.

Additionally, the majority notes that transfer from one facility to another does not generally render grievance procedures unavailable. However, the only cases that the majority cites for this proposition are factually distinguishable. Thus, their rationales are not persuasive here. Furthermore, they are both unpublished district court decisions. In the first case, *Blakey v. Beckstrom*, No. 06-163-HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007), the prisoner had been transferred between two facilities run by the Kentucky Department of Corrections. In that situation, the district court held that the Department's grievance policy was available to the prisoner at both facilities. *Id.* In the second case, *Jackson v. Walker*, No. 6:07-230-DCR, 2007 WL 2344938, at *5-6 (E.D. Ky. Aug. 14, 2007), the same situation applied to a prisoner transferred between two federal facilities, both of which used the nationwide Bureau of Prisons grievance process employed by all federal facilities. These conclusions make sense. In both cases, the former and current facilities were managed by the same entity. They shared policies and

practices. Ultimately, they would easily be prepared to process grievances between each other from transferred prisoners, and the district courts found as much.

Conversely, the Marion facility was privately owned and operated, unlike the public Laurel County facility. This is wholly unlike two facilities operated by the same entity that employ system-wide policies. Indeed, I believe that where two separate facilities do not work together to provide the former facility's remedies at the new facility, the former facility's administrative processes are no longer available to the transferred prisoner. *See, e.g.*, *Bradley v. Washington*, 441 F. Supp. 2d 97, 102-03 (D.D.C. 2006) (prisoner who filed suit against officials of Washington, D.C. jail was not required to exhaust the jail's administrative remedies after he had been transferred to two different federal facilities because the jail's grievance policy did not provide for grievance submission from outside the facility). Therefore, Laurel County's administrative processes were not available to Napier at the Marion facility.

Finally, the majority's holding misapplies to this case the doctrine of attempted exhaustion. The majority cites multiple cases for the proposition that Napier had to at least attempt to exhaust Laurel County's administrative remedies in order to satisfy the exhaustion requirement. In those cases, however, the courts were not asked to answer the same threshold question before us: whether an administrative process was available. Rather, in those cases, the courts had already passed that threshold and focused on the different issue of whether exhaustion of an available process could be excused for some other reason such as futility or prison interference. Although the majority hints that Laurel County's administrative process was available to Napier, it never expressly decides the issue. Instead, it bypasses the threshold, categorizing the process as "silent or vague in [Napier's] circumstance." *Supra* at 7. I believe we should only reach the issue of attempted exhaustion if we first expressly determine that administrative processes were available.[2] And because I believe no processes were available here

---

[2] The majority states that I "insist[] that there is no duty for prisoners to attempt to exhaust when 'availability' is even in question, but only when 'processes were available' and the issue is 'futility.'" *Supra* at 8. The last clause of that passage limits my opinion beyond what I have proposed. I believe that we should only reach the issue of attempted exhaustion in cases where we first find that administrative processes were available. Yet, the majority suggests that I would further reduce the sampling to cases

except for prisoners confined within Laurel County, we should not reach the issue of whether Napier should have attempted exhaustion.

Accordingly, I respectfully dissent.

---

where we first find that administrative processes were available *and* futility was an issue.  That is not so.