RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0127p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

LARRY LEE,

*Plaintiff-Appellant,*

*v.*

No. 14-1359

DEAN WILLEY, et al.,

*Defendants,*

SUPRIYA KOPF, Personal Representative of the Estate of Kameshwari Mehra,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-12625—Nancy G. Edmunds, District Judge.

Argued: April 23, 2015

Decided and Filed: June 18, 2015

Before: GUY, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Patrick McLain, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellant. Patrick McLain, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan, for Appellee.

1

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge.   Plaintiff Larry Lee, formerly a state prisoner, appeals from the entry of summary judgment in favor of the now-deceased Dr. Kameshwari Mehra, a part-time prison psychiatrist, with respect to Lee's § 1983 claim for deliberate indifference to an inmate's health or safety in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   The district court determined that Lee had failed to exhaust his administrative remedies with respect to this claim as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).   For the reasons that follow, we affirm the dismissal of this claim.[1]

**I.**

Lee, a homosexual man described as having effeminate mannerisms, was transferred from the Washtenaw County Jail to the custody of the Michigan Department of Corrections (MDOC) following his conviction on two counts of criminal sexual conduct involving adult male victims.   Lee's complaint asserted a variety of claims against a number of prison officials arising out of Lee's confinement at the MDOC's Charles Egeler Reception and Guidance Center (RGC) for intake and processing from March 23, 2007, until his transfer to another facility on May 9, 2007.   This appeal is confined to the claim that Dr. Mehra, a treating psychiatrist under contract with the MDOC, was deliberately indifferent to Lee's need for protection from prisoner-on-prisoner sexual assault.

The complaint alleged, in part, that several correctional officers (COs) had harassed Lee about being homosexual and/or made comments in front of other inmates encouraging sexual advances.   Lee alleged that three COs failed to act when Lee requested protection from inmates who were pursuing him for sex.   Further, Lee averred that he complained, to no avail, about staff harassment and/or being pursued for sex to mental health professionals Paul Schneeman, Wills

---

[1]We continue to refer to defendant as Dr. Mehra for ease of reference, although Supriya Kopf, the personal representative for the estate of Kameshwari Mehra, M.D., has been substituted as the appellee in this matter.

Dixon, and Dr. Mehra on March 26, April 2, and April 6, 2007, respectively. Lee maintained that, despite having asked for protection, he was raped in his cell by two unidentified inmates when he decided not to go to dinner on April 9, 2007.

Lee alleged that he went to the officer's desk after being assaulted, asked to speak with a mental health professional, and argued with an unknown CO who refused to give him a grievance form. Then, on the way to lunch the next day, CO Zischke refused to give him a grievance form and called him a "faggot." Lee alleged that, as a result, he resorted to submitting a "substitute grievance" on prisoner stationery on April 10, 2007. Defendants had no record of receiving this three-page substitute grievance letter—the only grievance from Lee that mentioned having been raped—and disputed whether it had been submitted as Lee claimed. Lee alleged that the COs continued to harass him about his sexual orientation until he was transferred to another facility on May 9, 2007.

This action was filed in July 2010, a few months before Lee's release on parole. Dr. Mehra's first motion for summary judgment for failure to exhaust administrative remedies was denied. Lee's claims were narrowed when defendants' motions for summary judgment on the merits were granted in part, and denied in part, in October 2012. The claims that survived summary judgment were: (1) a § 1983 claim for deliberate indifference to threats to Lee's safety against Dr. Mehra; (2) a § 1983 claim for deliberate indifference to threats to Lee's safety against six MDOC defendants (Sgt. Thomas, CO Willey, CO Bagley, CO Owen, CO Zischke, and psychologist Dixon); and (3) a state-law claim for intentional infliction of emotional distress against two of the MDOC defendants (Thomas and Willey).

The proceedings were stayed during Dr. Mehra's interlocutory appeal from the denial of qualified immunity. This court affirmed the denial in October 2013, concluding that, as a private employee under contract with the MDOC, Dr. Mehra was not entitled to assert a qualified immunity defense. Once the stay was lifted, the MDOC defendants—joined by the separately represented Dr. Mehra—moved for a bench trial to resolve factual disputes regarding exhaustion of the claims purportedly raised in the substitute grievance. Concluding that Lee did not have a right to a jury trial on these issues, the district court granted defendants' motion and conducted a full-day bench trial on February 20, 2014.

During the bench trial, the district court heard testimony from eight witnesses—including Lee—and received the parties' respective exhibits. Weighing the evidence and determining credibility, the district court made the critical factual finding that Lee had not submitted the substitute grievance letter on April 10, 2007. With that finding, and Lee's acknowledgement that no other grievance had mentioned Dr. Mehra at Step I, the renewed motion for summary judgment filed on behalf of Dr. Mehra was granted on March 4, 2014. All the claims against the remaining MDOC defendants were dismissed by stipulation the same day, and this appeal followed.[2]

## II.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory but not jurisdictional, and applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The PLRA has been interpreted to require "proper exhaustion," meaning that a prisoner must "'complete the administrative review process in accordance with the applicable procedural rules,'. . . [as] defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 82, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Id.* at 216.

A prisoner's lack of compliance may be excused if the administrative remedies are not available, but this court has required a prisoner to make "'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (citation omitted); *see also Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004) (citing cases). When a prisoner makes affirmative efforts to comply but does not succeed, we analyze "whether those

---

[2]The order granting summary judgment in favor of Dr. Mehra was entered *nunc pro tunc*, with the concurrence of counsel for Lee, as Dr. Mehra died shortly before the bench trial and his estate had not yet been opened.

'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting *Napier*, 636 F.3d at 224).

## A.    Right to Jury Trial

This court has not previously addressed whether material questions of fact concerning exhaustion under the PLRA should be decided by a judge or a jury. However, all six of the circuits that have considered the issue agree that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013); *see also Messa v. Goord*, 652 F.3d 305, 308-09 (2d Cir. 2011) (per curiam); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Bryant v. Rich*, 530 F.3d 1368, 1373-77 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1166, 1170-71 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 403 (2014). We review this question of law *de novo*.

The Seventh Amendment guarantees a right to a jury trial on the merits of an action seeking legal relief under § 1983. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). But, "not every factual issue that arises in the course of a litigation is triable to a jury as a matter of right, even if it is a suit at law (rather than in equity) within the meaning of the Seventh Amendment." *Pavey*, 544 F.3d at 741; *see also Small*, 728 F.3d at 269; *Messa*, 652 F.3d at 309; *Dillon*, 596 F.3d at 271. For example, judges may resolve disputed facts in deciding threshold issues of judicial administration such as subject-matter jurisdiction, personal jurisdiction, venue, and abstention in favor of another court or agency. *Accord Albino*, 747 F.3d at 1170; *Small*, 728 F.3d at 269-70; *Dillon*, 596 F.3d at 271-72.

It is true, as Lee observes, that the issue of exhaustion differs from subject-matter jurisdiction because exhaustion is a non-jurisdictional affirmative defense. *Woodford*, 548 U.S. at 101. Failure to exhaust more closely resembles the waivable defenses of lack of personal jurisdiction and improper venue, although exhaustion under the PLRA differs in that it is a prerequisite or precondition for bringing suit in any court. *See Small*, 728 F.3d at 269. These differences, however, do not alter our conclusion that exhaustion under the PLRA is analogous to other threshold issues of judicial administration that "courts must address to determine whether

litigation is being conducted in the right forum at the right time." *Dillon*, 596 F.3d at 272; *see also Small*, 728 F.3d at 269-70. "Matters of judicial administration often require judges to decide factual disputes that are not bound up with the merits of the underlying dispute." *Messa*, 652 F.3d at 309; *see also Pavey*, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control."). We affirm the district court's conclusion that the disputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial.[3]

## B.     Bench Trial

We review the district court's conclusions of law regarding exhaustion *de novo*, *Woolsey v. Hunt*, 932 F.2d 555, 563 (6th Cir. 1991), but must accept the district court's factual findings unless they are clearly erroneous, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). *See also Pavey v. Conley (Conley II)*, 663 F.3d 899, 904 (7th Cir. 2011); *Dillon*, 596 F.3d at 273.

The MDOC's grievance procedures provided that, after attempting to resolve the issue with a staff member, a prisoner may pursue a written grievance through the three-step grievance process. *See* MDOC Policy Directive 03.02.130 (eff. 3/5/07). A Step I grievance may be filed by completing the specified form and submitting it to the Step I grievance coordinator (Prisoner/Parolee Grievances (CSJ-247A)). *Id*. ¶¶ P and V. "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ R. If the grievant is dissatisfied with the response at Step I, or does not receive a timely response, a Step II grievance may be filed by sending an appeal to the appropriate grievance coordinator using the specified appeal form (Prisoner/Parolee Grievance Appeal (CSJ-247B)). *Id*. at ¶ BB. Likewise, if the grievant is dissatisfied with the response at Step II, or does not receive a timely response, a Step III grievance may be submitted using the

---

[3]Despite Lee's assertion that the district court erred by deciding the "core liability issue of whether Lee was raped," the record reflects that the factual disputes concerning exhaustion were not intertwined with the merits of Lee's underlying Eighth Amendment claim. Lee seems to rely on the district court's decision to exclude evidence of rape at trial, but that ruling was based on the separate determination that the issue of rape had not been exhausted by other grievances related to anti-gay harassment. We need not decide whether that ruling was correct because the MDOC defendants have been dismissed by stipulation and, as discussed below, those other grievances did not exhaust claims *against Dr. Mehra*.

same appeal form. *Id*. at ¶ FF. Time limits apply for bringing a grievance at each step, as well as for the MDOC's responses.

There is no dispute that the grievance process was generally available to Lee while he was in custody at RGC. In fact, he submitted thirteen Step I grievances using the correct form in the days both before and after April 10, 2007 (six on April 5, one on April 9, and six on April 12). Lee also pursued five of those grievances through Steps II and III after he was transferred to another facility. Lee testified, and the district court found, however, that CO Zischke had refused to give Lee a grievance form when he asked for one on April 10, 2007. Since it is not challenged on appeal, we assume, as the district court apparently did, that if Lee submitted the substitute grievance letter on April 10, that would be sufficient to exhaust under the circumstances.[4]

Defendants, who bore the burden of proof at trial, presented evidence to refute Lee's testimony that he submitted the grievance by placing it in the "kite box" designated for grievances on April 10, 2007. The substitute grievance letter—which included the claim that Dr. Mehra (and others) failed to protect Lee from being raped on April 9—was attached to Lee's complaint. It had no notation of having been received, and Lee acknowledged that he got no written response to it. Lee testified that two unit counselors, RUM Wozniak and ARUS Pearl, talked with him about the letter and sexual assault before moving him to another cell. But, Wozniak, who since retired, testified that he did not see the grievance letter in question and did not recall any conversation with Lee about being sexually assaulted. Pearl contradicted Lee as well, stating that she had not seen the grievance letter, that Lee never told her he had been raped, and that she moved Lee to another cell because he said he was being harassed about his sexual orientation.

Defendants' other witnesses included Scott Portt, who was the Step I grievance coordinator for Lee's facility during the relevant period. Portt stated that the "kite box" was kept locked, and that any mail retrieved from it that said "grievance" on it would have come to him. Portt testified that he never received the grievance letter that Lee attached to his complaint. Portt

---

[4]Zischke's refusal to provide a form was grieved both in the non-conforming substitute grievance letter dated April 10 and in one of the Step I grievances dated April 12 (SMN-07-04-572-17C ("572")).

also explained that the substitute grievance letter was not among the thirteen other grievances dated April 5 through April 12 that he received, grouped together, and assigned sequentially numbered identifiers on April 13, 2007 (several of which were rejected). Moreover, if Portt had received anything reporting a sexual assault, he would have escalated the matter by sending it to an inspector. Duane Burton, the inspector for RGC, testified not only that he did not receive Lee's substitute grievance letter, but also that such a letter would have prompted an investigation (which did not occur). The mail log system for internal affairs showed one letter from Lee about officer harassment, but none that alleged sexual assault. Nor was there a record of the letter being received by the Step III grievance coordinator at the time.

In reviewing the district court's findings for clear error, we may not substitute our judgment for that of the district court and "must uphold the [district] court's account of the evidence if it 'is plausible in light of the record viewed in its entirety.'" *Pledger v. United States*, 236 F.3d 315, 320 (6th Cir. 2000) (quoting *Anderson*, 470 U.S. at 574). In doing so, we also "must give due regard to the trial court's opportunity to judge the witnesses' credibility." FED. R. CIV. P. 52(a)(6). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. On this record, as Lee's counsel conceded at argument, it was not clearly erroneous for the district court to find by a preponderance of the evidence that the substitute grievance letter was not submitted by Lee on April 10, 2007.

**C.    Summary Judgment**

A district court's dismissal of a prisoner's claim for failure to exhaust administrative remedies is reviewed *de novo*. *See Risher*, 639 F.3d at 239. A defendant who moves for summary judgment on this defense bears the burden to show there was an absence of evidence to support the nonmoving party's case. *See Napier*, 636 F.3d at 225 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Lee does not argue that there were material questions of fact that precluded summary judgment on the issue of exhaustion. Rather, the question is whether, even if the substitute letter is disregarded, Lee's claim for deliberate indifference against Dr. Mehra was exhausted by two of his other grievances (SMN-07-04-571-17C ("571") and SMN-07-04-572-17C ("572")).

The first of those, dated April 5, grieved offensive comments made by Sgt. Thomas during intake on March 23 ("571"). The second, dated April 12, complained that CO Zischke refused to give Lee a grievance form and called him a "faggot" ("572"). Dr. Mehra argued that these grievances could not suffice to exhaust the claim against him because neither mentioned him in the Step I grievance as was required by the grievance procedures. *See Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009); *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009). Lee concedes as much, but argues that this defect was not an impediment to exhaustion because the Step II appeals for those grievances included the marginal notation, "I complained to Dr. Mira [sic] as well."

To be sure, this court has refused to enforce procedural requirements when "prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). This principle provides no safe harbor for Lee, however, since the denial of the Step II grievances made no mention of Dr. Mehra; the Step III grievances filed by Lee failed to mention Dr. Mehra; and the Step III denials concerned only the merits of the claims raised in the Step I grievances against Thomas and Zischke. *See Cook v. Caruso*, 531 F. App'x 554, 562-63 (6th Cir. 2013) ("For *Reed-Bey*'s holding to apply, Cook would have had to receive 'merits-based responses *at each step*.'" *Reed-Bey*, 603 F.3d at 326 (emphasis added).). Thus, it was not error for the district court to conclude that Lee failed to exhaust his administrative remedies with respect to the claim against Dr. Mehra.

## III.

For the reasons stated, we **AFFIRM** the district court's judgment.