RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KYLE BRANDON RICHARDS,

                    *Plaintiff-Appellant*,

    *v.*

THOMAS PERTTU, Residential Unit Manager, also named as Unknown Perta in the complaint, also known as Perttu,

                    *Defendant-Appellee*.

No. 22-1298

─────────────────

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:20-cv-00076—Hala Y. Jarbou, District Judge.

Argued: January 18, 2024

Decided and Filed: March 19, 2024

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Sean Gray, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Joshua S. Smith, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Sean Gray, J. Scott Ballenger, Lauren McNerney, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Joseph Y. Ho, Austin C. Raines, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Kyle Brandon Richards, Baraga, Michigan, pro se.

————————————

**OPINION**

————————————

RONALD LEE GILMAN, Circuit Judge.  Kyle Brandon Richards, a Michigan prisoner, appeals the district court's judgment dismissing his 42 U.S.C. § 1983 civil-rights suit because Richards failed to exhaust his administrative remedies.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Richards and two fellow inmates at the Baraga Correctional Facility in Michigan (the Plaintiffs) sued Resident Unit Manager Thomas Perttu based on allegations of sexual harassment, retaliation, and destruction of property, but only Richards has appealed the adverse judgment against them. In his retaliation claim, Richards alleges that Perttu prevented him from filing grievances related to Perttu's alleged sexual abuse by ripping up the grievances or otherwise destroying them.  The complaint lays out several specific instances when Perttu allegedly destroyed grievances that Richards had intended to file.  Richards also claims that Perttu threatened to kill him if he persisted in trying to file more grievances, and that he was wrongfully held in administrative segregation for doing so. The complaint seeks both injunctive relief and monetary damages.

Perttu moved for summary judgment, arguing that the Plaintiffs had failed to exhaust their administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Richards thereafter cross-moved for summary judgment, raising various First Amendment retaliation and Eighth Amendment claims. The district court denied Perttu's motion because questions of fact precluded summary judgment on the exhaustion issue.  Richards's motion for summary judgment was similarly denied as premature.  A magistrate judge then held an evidentiary hearing to determine whether the Plaintiffs had exhausted their administrative remedies.

The Report and Recommendation of the magistrate judge recommended that the district court find that Perttu had proved by a preponderance of the evidence that the Plaintiffs had failed to exhaust their administrative remedies, and that they had failed to prove that Perttu had prevented them from filing grievances. *See Richards v. Perttu*, No. 2:20-CV-76, 2021 WL 8055485 (W.D. Mich. Dec. 3, 2021) (Report and Recommendation). Over the Plaintiffs' objections, the district court adopted the Report and Recommendation and dismissed the case without prejudice. *See Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654 (W.D. Mich. Mar. 22, 2022).

Richards, as the sole appellant, raises the following three issues on appeal: (1) whether the district court erred by ordering an evidentiary hearing to decide the disputed questions of fact that are intertwined with the exhaustion issue (rather than submitting the exhaustion issue to a jury), (2) whether the magistrate judge was biased in finding that Richards's witnesses were not credible, and (3) whether the district court should have provided him with a free transcript of the evidentiary hearing. He has also requested us to order the production of the evidentiary-hearing transcript, as well as for a stay and remand of proceedings until the transcript is produced.

After reviewing the arguments in the present case, we directed both parties to file supplemental briefs to address the question of whether the Seventh Amendment to the U.S. Constitution requires a jury to decide disputed questions of fact relating to exhaustion under the PLRA when the exhaustion issue is intertwined with the merits of the underlying dispute. In response, Richards reiterated his previous argument that disputed questions of fact related to exhaustion that are intertwined with the merits should be heard by a jury. Perttu, in contrast, argues that (1) the factual disputes concerning exhaustion are not intertwined with the merits in the present case, and (2) even if the factual disputes are intertwined, a jury is not required to resolve them.

## II.  ANALYSIS

### A.  Richards's First Amendment claim is intertwined with the factual disputes concerning exhaustion

Under the PLRA, a prisoner may not sue to vindicate his constitutional rights under 42 U.S.C. § 1983 unless he has first exhausted the administrative remedies available to him. 42 U.S.C. § 1997e(a).  "This requirement is a strong one."  *Napier v. Laurel County*, 636 F.3d 218, 222 (6th Cir. 2011).  It requires "proper exhaustion," which "'means using all steps that the agency holds out, and doing so *properly*.'"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In rare circumstances where prison officials are unable or are consistently unwilling to provide relief, administrative schemes are "so opaque that [they] become[], practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the courts will consider administrative remedies unavailable and allow otherwise unexhausted claims to proceed.  *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

A rule requiring exhaustion of administrative remedies "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992), *superseded by statute on other grounds as stated in Booth v. Churner,* 532 U.S. 731, 740–41 (2001).  The PLRA thus "mandates early judicial screening of prisoner complaints," *Jones v. Bock*, 549 U.S. 199, 202 (2007), and "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," *id.* at 204.

The exhaustion requirement is mandatory, but not jurisdictional.  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Rather, the failure to satisfy the exhaustion requirement is an affirmative defense, which requires prison officials to plead and prove that the prisoner failed to exhaust the available administrative remedies.  *Jones*, 549 U.S. at 204, 212–13.  In *Lee*, this court held that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury."  *Lee*, 789 F.3d at 677 (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013)).

In the present case, Richards argues that, under the Seventh Amendment, a jury must resolve the disputed facts of exhaustion that are intertwined with his substantive claim.  He notes that his second claim alleges that Perttu prevented him from filing grievances and retaliated against him for having done so.

Before addressing Richards's Seventh Amendment argument, we must first determine if the factual disputes about exhaustion in fact overlap with the merits of his First Amendment retaliation claim.  If the factual disputes do not overlap, then we need not reach the Seventh Amendment question because there is no doubt that a judge may otherwise resolve factual disputes regarding exhaustion under the PLRA.  *Lee*, 789 F.3d at 677.  But if the exhaustion issue is in fact intertwined with the merits of Richards's claim, then we must address his Seventh Amendment argument.  The complaint specifically alleges that Perttu destroyed Richards's grievances pertaining to sexual harassment by Perttu in response to Richards's attempts to file the grievances. We therefore must ascertain whether these facts allege a prima facie case of First Amendment retaliation.

A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

With respect to the first element, this court has held that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  The principal limitation to this constitutional right is if the grievance is "frivolous."  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *see also King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012) ("Abusive or manipulative use of a grievance system would not be protected conduct.").

In the present case, the complaint alleges that Perttu made several sexual advances toward Richards, and that Perttu repeatedly tried to coerce Richards into having sexual relations

with him.  Moreover, the complaint alleges that multiple inmates witnessed Perttu's harassment.  These serious and detailed allegations cannot reasonably be considered frivolous.  *See Lappin*, 630 F.3d at 472 (holding that a complaint should not be dismissed when allegations of abuse by prison staff were "at least plausible").  By complaining about the alleged sexual harassment that he endured, Richards "was pursuing a grievance about prison conditions and seeking redress of that grievance.  Accordingly, [Richards] was engaged in protected conduct."  *See Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).

Regarding the second element, "[a]n adverse action is one that is *capable* of deterring a person of ordinary firmness from exercising the constitutional right in question."  *Lappin*, 630 F.3d at 472 (emphasis in original) (citation and internal quotation marks omitted).  "*Actual* deterrence need not be shown."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (emphasis in original).  "[T]his element is not an overly difficult one for the plaintiff to meet."  *Lappin*, 630 F.3d at 472.  Consequently, "unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury."  *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citation and internal quotation marks omitted).

This court has previously agreed with other circuits that "confiscating an inmate's legal papers and other property constitutes a sufficient injury to support a First Amendment retaliation claim."  *Id.* at 604 (collecting cases).  At issue in *Bell* was whether the inmate alleged a plausible adverse action after prison guards, among other things, stole the plaintiff's legal and writing materials in retaliation for filing lawsuits.  In holding that this act constituted an adverse action, this court explained: "The fact that defendants repeatedly stole plaintiff's legal papers certainly had the potential to directly impede his pursuit of his claim, and may have caused others to believe that any efforts they might expend in preparing legal claims would be wasted since any materials they prepared could easily be destroyed or confiscated."  *Id.*  And in concluding that this retaliatory act survived the "ordinary firmness" standard, the court emphasized that the standard is intended only to "weed out . . . inconsequential actions."  *Id.* at 606 (citation and internal quotation marks omitted).  The court ultimately deemed the plaintiff's allegations consequential, thus allowing the lawsuit to proceed as a First Amendment retaliation claim.  *Id.*

The logic behind *Bell* applies in the present case.  Richards alleges that he attempted to file grievances accusing Perttu of sexual harassment. But in response to Richards's attempts, Perttu allegedly destroyed the grievances.  We see no meaningful difference between the alleged destruction of Richards's grievances and the alleged theft of the legal papers in *Bell*.  In *Bell*, the court was concerned with even the "potential" to impede the plaintiff's ability to engage in protected speech.  *Id.* at 605.  Here, we have more than "potential" interference with protected speech because Perttu is alleged to have directly destroyed Richards's grievances.  *See Herron*, 203 F.3d at 415 (holding that the First Amendment protects an inmate's right to file grievances against prison officials).  Richards's allegations therefore satisfy the second element of a First Amendment retaliation claim.

This leaves us with the third and final element.  "Under the third element, '[u]sually the question of causation is a factual issue to be resolved by the jury, and may be satisfied by circumstantial evidence.'" *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)) (alteration in original).  "A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citation and internal quotation marks omitted).  "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

The complaint in question asserts that Perttu's alleged destruction of the grievances proximately interfered with Richards's speech.  Richards claims that after he filed grievances alleging sexual harassment by Perttu, Perttu stated that "[he was] not letting [Richards] file these grievances" and that Perttu "proceeded to rip them up in front of [Richards]." This allegation is sufficient to satisfy the causation element of a First Amendment retaliation claim.  *See id.*  And other prisoners allegedly witnessed the destruction of these grievances. *See Maben*, 887 F.3d at 268 (noting that causation is evidenced when other "witnesses corroborate [a plaintiff's] account of the events").

This now brings us to motive.  "We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive." *Zamiara*, 680 F.3d at 695.  In the present case, there is "a suspicious temporal proximity between [Richards's attempted] grievance and the alleged retaliatory action" because Perttu allegedly destroyed Richards's grievances "*immediately* after" Richards attempted to file his grievances. *See Maben*, 887 F.3d at 268 (emphasis in original).  The complaint further alleges that Perttu told Richards to "go ahead and keep filing grievances. We[']re reading them. I choose which ones I'll let you file." Perttu also allegedly told Richards that "I'm not going to let you file any sexual assault grievances." Based upon these allegations, we conclude that Richards has sufficiently raised the issue of whether Perttu's "adverse action was motivated at least in part by [Richards's] protected conduct." *See Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002).

Perttu does not directly contest whether his alleged actions were motivated by Richards's protected conduct. Accordingly, because Perttu does not rebut the complaint's allegations concerning his motive, the third element of Richards's retaliation claim is satisfied.

Perttu argues in response that a prison official's interference with the grievance process can never give rise to a First Amendment claim because such interference is not an adverse action.  According to Perttu, if a prison official interferes with a prisoner's access to the grievance system, then administrative remedies would be considered unavailable, and therefore a prisoner would not be prevented from accessing the court system.  There are two problems with this argument.  First, it is likely forfeited because Perttu did not make this argument in his opening brief.  *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("[W]e will treat an argument as forfeited when it was not raised in the opening brief" (cleaned up)).  In fact, he raised it only after we asked for supplemental briefing on a separate issue.

But even setting the forfeiture issue aside, Perttu's argument lacks merit.  The relevant inquiry in a First Amendment retaliation claim is whether the defendant's actions would *deter* the plaintiff from engaging in protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Based on Richards's allegations, such deterrence has been shown in the present case.  That a prisoner can access the court system if a prison official's interference with the prison grievance process is so severe that it renders administrative remedies unavailable is thus irrelevant.  The single

unpublished district court opinion that Perttu cites in his supplemental brief does not convince us otherwise.

In sum, Richards makes out a prima facie case of First Amendment retaliation because Perttu allegedly destroyed Richards's grievances in response to Richards's attempted filing of those grievances. We therefore conclude that the factual disputes concerning exhaustion (i.e., whether Perttu prevented Richards from filing those grievances) are intertwined with the merits of Richards's retaliation claim. As a result, we now turn to Richards's argument that the Seventh Amendment demands that a jury decide the factual disputes in this case.

**B.     The district court erred in ordering an evidentiary hearing to determine if Richards failed to exhaust his claims**

The Seventh Amendment provides that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Although the Supreme Court has recognized the right to a jury trial on the merits in § 1983 actions, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999), the question of whether the right applies to other aspects of the action depends upon "the nature of the issue . . . rather than the character of the overall action." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).

A judge, rather than a jury, can ordinarily decide disputed facts with regard to the PLRA's requirement that a prisoner must exhaust his administrative remedies before filing a § 1983 action in federal court. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (holding that "disputed issues of fact regarding exhaustion under the PLRA present[] a matter of judicial administration that [can] be decided in a bench trial"). In *Lee*, the factual dispute was whether the plaintiff had exhausted his administrative remedies by filing grievances concerning a prison doctor who was alleged to have been deliberately indifferent to the plaintiff's safety. But *Lee* noted that this ordinary exhaustion requirement applies when "factual disputes [] are *not* bound up with the merits of the underlying dispute." *Id.* (emphasis added) (quoting *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011)). *Lee* did not answer the question of what happens when the factual disputes *are* intertwined. Such is the situation here, which makes this case one of first impression in our circuit.

Only one federal court of appeals, to our knowledge, has directly faced this issue. That circuit is the Seventh, which in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), noted a "possible overlap between the factual issues relating to exhaustion and those relating to the merits of the [underlying] excessive-force claim" because the plaintiff's broken arm was "an issue common to both the allegedly inexcusable failure to exhaust and the excessiveness of the force that caused the break." *Id.* at 741–42.

The *Pavey* court observed that "not every factual issue that arises in the course of a litigation is triable to a jury as a matter of right, even if it is a suit at law (rather than in equity) within the meaning of the Seventh Amendment." *Id.* at 741. According to that court, "[t]he generalization that emerges . . . is that juries do not decide what forum a dispute is to be resolved in. Juries decide cases, not issues of judicial traffic control." *Id.* So despite the "peculiarity" present when factual issues concern both exhaustion and the merits of a plaintiff's claim, the court noted that there was no Seventh Amendment violation because "any finding that the judge makes, relating to exhaustion, that might affect the merits may be reexamined by the jury if—and only after—the prisoner overcomes the exhaustion defense and the case proceeds to the merits." *Id.* at 742; *accord Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*) (commenting in *dicta* that the Ninth Circuit "agree[s] with the Seventh Circuit that, if a factual finding on a disputed question is relevant both to exhaustion and to the merits, a judge's finding made in the course of deciding exhaustion is not binding on a jury deciding the merits of the suit").

We are not persuaded by the Seventh Circuit's analysis in *Pavey*. *Pavey* reasons that any finding by a judge relating to exhaustion that might affect the case's merits may be reexamined by the jury. *Pavey*, 544 F.3d at 742. But the rationale that a jury may reexamine the judge's factual findings rings hollow if the prisoner's case is dismissed for failure to exhaust his or her administrative remedies. In such an instance, a jury would never be assembled to resolve the factual disputes. That is *Pavey*'s fatal flaw.

Moreover, several district-court decisions in the Second Circuit are at odds with *Pavey*. *See Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 403–04 (E.D.N.Y. 2023); *Gunn v. Ayala*, No. 20-CV-840, 2023 WL 2664342, at *10 (S.D.N.Y. Mar. 28, 2023); *Stephens v. Venetozzi*, No.

13-CV-5779, 2020 WL 7629124, at *3 (S.D.N.Y. Dec. 21, 2020); *Daum v. Doe*, No. 13-CV-88, 2016 WL 3411558, at *2 (W.D.N.Y. June 22, 2016); *Rickett v. Orsino*, No. 10-CV-5152, 2013 WL 1176059, at *23 (S.D.N.Y. Feb. 20, 2013), *report and recommendation adopted*, 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013). Those courts hold that the Seventh Amendment requires a jury trial where resolution of the exhaustion question would run "perilously close" to resolving the disputed issues of material facts on a plaintiff's substantive claim. *See, e.g.*, *Daum*, 2016 WL 3411558, at *2; *Sanchez*, 662 F. Supp. 3d at 403.

The *Rickett* court, for example, reasoned that it was following the Second Circuit's guidance in *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011). In *Messa*, the Second Circuit held that juries generally need not decide exhaustion issues under the PLRA. But the *Messa* court also observed:

> Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute. In such cases, the Seventh Amendment is not violated. Here, the factual disputes relating to exhaustion are not intertwined with the merits of [the plaintiff's] underlying excessive force claim.

*Id.* at 309 (internal citations omitted).

The *Rickett* court concluded that the above language "from *Messa* implies . . . [that] the factual disputes concerning exhaustion must be resolved by the jury at trial" when the disputes *are* intertwined with the merits at the grievance stage of the case. *Rickett*, 2013 WL 1176059, at *23. Every other district court in the Second Circuit that has addressed this question has followed the *Rickett* court's logic, even though one court subsequently conceded that "the Court of Appeals for the Second Circuit has not expressly held that a jury must resolve factual disputes regarding exhaustion when the underlying facts are entangled with those that underlie a plaintiff's substantive claims." *Stephens*, 2020 WL 7629124, at *3. A split in authority therefore exists between the Seventh Circuit and the district courts in the Second Circuit. We are more persuaded by the approach followed by the district courts in the Second Circuit.

Our analysis takes into account that the Supreme Court has observed that "many procedural devices developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment." *Parklane Hosiery Co.,*

*Inc. v. Shore*, 439 U.S. 322, 336 (1979) (collecting cases).  The Supreme Court, for example, has held that a directed verdict does not violate the Seventh Amendment, *Galloway v. United States*, 319 U.S. 372, 388–93 (1943), nor does summary judgment, *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319–21 (1902).  But those cases are distinguishable because none permit a judge to decide genuine disputes of material fact at a preliminary stage of the case that would normally be reserved for a jury.

That is exactly what the magistrate judge did here.  And those disputed facts settled the merits of Richards's retaliation claim.  As a consequence, Richards was stripped of his "right to a jury's resolution of the ultimate dispute." *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("[A] §1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment.").

We believe that this court's decision in *Fireman's Fund Insurance Co. v. Railway Express Agency, Inc.*, 253 F.2d 780 (6th Cir. 1958), is particularly persuasive on the question before us.  At issue in that case was whether the amount in controversy pleaded by the plaintiff was sufficient to establish the district court's diversity jurisdiction.  The district court dismissed the action for lack of subject-matter jurisdiction because it determined that the plaintiff did not meet the amount-in-controversy requirement. *Id.* at 781.  But this court reversed, holding that a court may dismiss for lack of subject-matter jurisdiction on the basis of the amount in controversy only "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff was never entitled to recover that amount." *Id.* at 782.

As relevant here, *Fireman's Fund* refers to a circumstance where diversity jurisdiction is intertwined with the merits of the case.  In that situation, the court noted: "Where the jurisdictional issue as to amount in controversy can not be decided without the ruling constituting at the same time a ruling on the merit of the case, the case should be heard and determined on its merits through regular trial procedure." *Id.* at 784 (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)); *see also Cameron v. Children's Hosp. Med. Ctr.* 131 F.3d 1167, 1170 (6th Cir. 1997)

(observing that "whether a district court has subject matter jurisdiction is a question for the court . . . unless the jurisdictional issue is inextricably bound to the merits of the case.").

Although "the PLRA exhaustion requirement is not jurisdictional," *Ngo*, 548 U.S. at 101, the rationale of *Fireman's Fund* is relevant here. Just as an absence of subject-matter jurisdiction might be raised as a defense to dispose of a case, the failure to exhaust administrative remedies under the PLRA operates in the same way. We see no reason to treat exhaustion differently from a jurisdictional rule in this context because the effect of successfully raising the defenses is the same—the plaintiff may not proceed in the action.

This court in *Fireman's Fund* further noted that a case should proceed to trial even if the amount-in-controversy dispute is "decisive of the merits of the plaintiff's claim." *Fireman's Fund. Ins. Co.*, 253 F.2d at 784. And this means that a decision on the merits might be reached even if the court later realizes that it lacks subject-matter jurisdiction. Unlike exhaustion, an absence of subject-matter jurisdiction implicates a federal court's ability to even hear the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). So if *Fireman's Fund* requires that certain cases be heard and determined on the merits even when constitutionally implicated jurisdictional disputes might procedurally terminate the proceedings, we are all the more convinced that the result should be the same when the lesser concern of an affirmative defense, such as the PLRA's requirement to exhaust administrative remedies, implicates the merits of a claim.

We therefore conclude that the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case. In doing so, we emphasize that a jury trial is appropriate in these circumstances only if the district court finds that genuine disputes of material fact concerning PLRA exhaustion are "decisive of the merits of the plaintiff's claim." *See Fireman's Fund. Ins. Co.*, 253 F.2d at 784. Accordingly, we agree with Richards that the district court erred when it ordered an evidentiary hearing to settle the disputed facts in question.

**C.       Richards's remaining arguments**

Richards also argues that the magistrate judge was biased in finding that his witnesses were not credible.  He likewise contends that the district court should have provided him with a free transcript of the evidentiary hearing before the magistrate judge.  But we need not address these arguments because we have concluded that the district court erred by usurping the role of the jury by resolving the factual disputes at issue.  Accordingly, these claims are mooted because they would not "make a difference to the legal interests of" Richards.  *See McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)).

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.