*Walker v. Senecal*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2024
No. 23-6557

**CARLTON WALKER**,
*Plaintiff-Appellant*,

v.

**RICHARD SENECAL, BRIAN BENWARE**,
*Defendants-Appellees.*[*]

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: NOVEMBER 22, 2024
DECIDED: MARCH 6, 2025

---

Before:     LIVINGSTON, *Chief Judge*, and JACOBS and MENASHI,
*Circuit Judges*.

Plaintiff-Appellant Carlton Walker sued state officials and prison officers under 42 U.S.C. § 1983 for violations of his constitutional rights to freedom of speech, due process, and the equal protection of the laws. The district court either dismissed the claims

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

or awarded summary judgment to the defendants. We conclude that Walker identified a genuine dispute of material fact as to whether an officer's destruction of a draft amended complaint, the officer's threat of retaliation if Walker were to file a grievance about the destruction, and a physical assault by other officers who repeated the threat—taken together—amount to an adverse action that was causally related to his protected speech and therefore violated his right to freedom of speech. We vacate the judgment of the district court with respect to that claim and remand for further proceedings. We affirm the judgment in all other respects.

---

MEHWISH ASLAM SHAUKAT (Gregory Cui, *on the brief*), Roderick & Solange MacArthur Justice Center, Washington, DC, *for Plaintiff-Appellant*.

BEEZLY J. KIERNAN, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *on behalf of* Letitia James, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees*.

---

PER CURIAM:

Based on his treatment as an inmate at the Bare Hill Correctional Facility, Plaintiff-Appellant Carlton Walker sued New York State officials and prison officers under 42 U.S.C. § 1983 for alleged violations of his constitutional rights to freedom of speech, due process, and the equal protection of the laws. The U.S. District Court for the Northern District of New York addressed Walker's claims in three stages. First, it screened Walker's *pro se* complaint pursuant to 28 U.S.C. § 1915A and identified cognizable claims for retaliation in violation of the First Amendment against two prison

officers: Defendants-Appellees Richard Senecal and Brian Benware. The district court dismissed with prejudice Walker's due process and equal protection claims against the governor, the attorney general, and the judges of the New York Court of Appeals.[1] Second, the district court adopted the report and recommendation of a magistrate judge to grant Benware's motion to dismiss and to grant in part Senecal's motion to dismiss. Third, again adopting the recommendation of the magistrate judge, the district court granted Senecal's motion for summary judgment.

We conclude that Walker identified a genuine dispute of material fact regarding his claim against Senecal for retaliation in violation of the First Amendment. Walker alleges that Senecal destroyed his legal complaint, that Senecal threatened to harm him if he filed a grievance, and that two officers assaulted him while repeating Senecal's threat. These allegations, taken together, plausibly suggest that Senecal took an adverse action against Walker that was causally related to Walker's protected speech. At the same time, we conclude that the district court correctly dismissed the other claims against Senecal and Benware as either *de minimis* or as not plausibly related to Walker's protected speech. The district court correctly dismissed the due process and equal protection claims insofar as those claims challenge the validity of Walker's confinement. We vacate the judgment of the district court with respect to the retaliation claim against Senecal and remand for further proceedings. We affirm the judgment in all other respects.

---

[1] Walker sought declaratory and injunctive relief against these defendants for "their individual and collective failure and refusal to provide [Walker] with a forum with full and fair opportunity to establish his innocence, and to obtain his release from the fundamentally unjust conviction and unlawful imprisonment." App'x 120.

**BACKGROUND**

According to the allegations of Walker's complaint, in September 2017 Senecal stopped Walker outside the prison mess hall, grabbed legal materials he was holding, and "ripped out the first 18 [p]ages" of a draft amended complaint. App'x 104-05. Senecal told Walker that "[h]e took [the pages] because [Walker] was challenging the prison condition[s] and [he] ha[d] the Commissioner['s] name on it and the Superintendent['s] name." *Id.* at 241. On October 2, 2017, Walker told Senecal that he would file a grievance against him for ripping out the pages, and Senecal responded that "if he []ever put his name on any grievance concerning him ripping out the pages, he would make sure that [Walker] end[ed] up dead or in the Box," referring to the Special Housing Unit of the prison. *Id.* at 106. Another officer repeated Senecal's threat that day, emphasizing that "Senecal is crazy, and mean[s] what he said." *Id.* The following day, two unnamed officers "rushed" into the bathroom after Walker, and "slapped [Walker] around, pushed him, [and] roughed him up." *Id.* at 106-07. The assailants asked Walker "if he [saw] how easily he could get kill[ed] for filing grievances against Officer Senecal" and repeated Senecal's threat that filing grievances would mean "going to the Box or end[ing] up dead." *Id.*

Walker further alleges that Senecal "recruited" Benware to take two other retaliatory actions on October 10, 2017: (1) filing a "fabricated" misbehavior report against Walker and (2) firing Walker from his position as a law clerk in the prison law library. *Id.* at 110. Walker suggests that Senecal instigated these acts because, before Benware filed the report or fired Walker, Walker saw Benware "le[ave] out of the Law Library, and [go] to an area where Officer Senecal was hanging out with other Officers." *Id. at* 108. Walker challenged the findings of the misbehavior report through an internal

4

grievance procedure and in state court, but the findings were upheld. *See In re Walker v. Yelich*, 95 N.Y.S.3d 648, 649 (3d Dep't 2019).

Over five months later—during a period between March 23, 2018, and June 29, 2018—Senecal on five occasions either conducted or directed other officers to conduct a "rough search" of Walker, as Senecal allegedly described it, that Walker alleges was "akin to a vicious assault," App'x 110-13, and the district court called a "pat frisk[]," *Walker v. Senecal*, No. 20-CV-82, 2021 WL 3793771, at *1 (N.D.N.Y. Aug. 26, 2021). Senecal conducted only one of the searches himself. After the final search, Senecal threatened that if Walker filed a grievance against him, he would impose a ban on recreation whenever he was on duty. Senecal denies many of these allegations.[2]

**STANDARD OF REVIEW**

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1092 (2d Cir. 2024) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)). In conducting that review, we are not "required to accept as true allegations that are

---

[2] With respect to the alleged destruction of part of Walker's amended complaint, Senecal attests that "I briefly checked Walker's bag to determine whether the legal materials were his, and then I instructed Walker to bring his bag back to his dorm and then come back for chow with the rest of his dorm. I did not confiscate, destroy, or remove any of Walker's legal materials." App'x 351. With respect to the alleged threat, Senecal attests that he "never threatened or harassed Carlton Walker, verbally or otherwise," or "use[d] abusive language toward Carlton Walker or engage[d] in retaliation against him." *Id.* "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury," however, "not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We similarly "review a district court's grant of summary judgment *de novo*." *Kravitz v. Purcell*, 87 F.4th 111, 118 (2d Cir. 2023). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Throughout our analysis, "[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Kravitz*, 87 F.4th at 119 (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)).

## DISCUSSION

Walker argues that the district court erred in dismissing his claims and in granting summary judgment to Senecal. With respect to his claims for retaliation in violation of the First Amendment, Walker argues (1) that his allegations plausibly establish a causal connection between his protected speech and Benware's actions, and (2) that the district court failed to consider the aggregate effect of Senecal's alleged conduct. With respect to his equal protection and due process claims, he argues that the district court erred because the claims do not challenge the validity of his confinement but seek only a fair opportunity to litigate his innocence.

We conclude that Walker has identified a genuine dispute of material fact with respect to his First Amendment retaliation claim

6

against Senecal. When considered together, Senecal's purported conduct—the destruction of Walker's legal materials, the threat to kill Walker or throw him in the box for filing a grievance, and the attack by two officers who repeated the threat—plausibly suggests an adverse action that was causally related to Walker's protected speech. At the same time, we conclude that the district court correctly dismissed Walker's remaining claims against Benware and Senecal because the alleged retaliatory conduct was either *de minimis* or unrelated to Walker's speech. The district court also did not err by dismissing Walker's equal protection and due process claims.

**I**

To sustain a claim for retaliation in violation of the First Amendment under § 1983, a prisoner must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). The parties do not dispute that Walker's allegations meet the first requirement because the filing of a lawsuit or a grievance is protected conduct. *See Espinal*, 558 F.3d at 129; *Gill*, 389 F.3d at 384.

To constitute "adverse action," conduct must be of the "type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill,* 389 F.3d at 381. We "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than

7

average citizens, before a retaliatory action taken against them is considered adverse.'" *Hayes*, 976 F.3d at 272 (quoting *Davis*, 320 F.3d at 353). "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis*, 320 F.3d at 354 (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

Courts must approach prisoner retaliation claims with "skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis*, 320 F.3d at 352). Moreover, "claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated." *Dawes*, 239 F.3d at 491. For these reasons, we require that prisoner retaliation claims be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).

## A

The district court granted Benware's motion to dismiss in full. On appeal, Benware concedes that Walker plausibly alleges the first two elements of a First Amendment retaliation claim. He argues only that Walker fails to plausibly allege a causal relationship between his protected speech and Benware's conduct. We agree.

Walker fails to plausibly allege that Benware even knew of the protected speech, let alone that it "played a substantial part in [Benware's] adverse action." *Davis*, 320 F.3d at 354 (quoting *Dawes*, 239 F.3d at 492). The fact that shortly before Walker was fired, Benware "went to an area where Officer Senecal was hanging out

8

with other Officers" does not alone support such an inference. App'x 108. Walker additionally alleges that Benware stated that "he did not want to speak about [the firing] because the situation is above him and out of his hand," *id.* at 109, which similarly does not plausibly suggest a causal relationship with the protected speech. And Walker cannot rely on the bare conclusory allegation that Senecal "recruited Officer Benware to … fire[] him from the Law Library." *Id.* at 110.

Walker notes that only eight days passed between his filing of a grievance against Senecal and Benware's actions. "We have held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Hayes*, 976 F.3d at 273 (quoting *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002)). Especially when the grievance did not involve the defendant, however, we require further allegations to plausibly establish retaliatory animus. *Compare Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *3 (2d Cir. Sept. 30, 2022) (identifying "a reasonable inference that the defendants had a retaliatory motivation for the search" based on allegations not only of temporal proximity but also of a defendant's "alleged statement tying the search to [the plaintiff's] advocacy" and the defendants' "false and contradictory testimony at the hearing about the reason for the search"), *with Dorsey v. Fisher*, 468 F. App'x 25, 27-28 (2d Cir. 2012) (explaining that a "temporal connection does not suffice to plead causation" when the plaintiff "has not provided any plausible reason why [one officer] would file an allegedly false misbehavior report other than that [the plaintiff] filed a grievance against [a different officer]"). Without such allegations, a mere "temporal connection does not suffice to plead causation" in this case. *Dorsey*, 468 F. App'x at 28.

In fact, the additional factual material in the complaint suggests that Benware lacked retaliatory animus. As Walker acknowledges in

the complaint, he was found guilty of the charges in the misbehavior report after a hearing, and a state court sustained the charges. *See Walker*, 95 N.Y.S.3d at 649. Beyond the conclusory assertion that the report was "fabricated," Walker fails to allege any facts suggesting that he did not commit the charged conduct. Thus, Walker has not plausibly alleged that the misbehavior report was even false—let alone that it was fabricated in retaliation for protected speech. Moreover, the complaint identifies two plausible non-retaliatory reasons for Walker's firing: (1) that Walker committed the conduct charged in the misbehavior report, and (2) that Walker was working on personal legal matters in the library when he was required to assist other inmates.[3] These allegations of plausible non-retaliatory reasons reinforce the lack of plausible allegations of retaliation. We affirm the judgment of the district court insofar as it dismissed the First Amendment retaliation claim against Benware.

**B**

On a motion from the defendants, the district court dismissed most of the claims against Senecal but allowed discovery on two aspects of Walker's First Amendment retaliation claim: Senecal allegedly destroyed Walker's legal complaint, and he threatened to kill Walker or throw him in the box if he filed a grievance. After discovery on those issues, the district court granted summary judgment to Senecal because neither destroying Walker's complaint nor making a threat was sufficiently serious to qualify as an adverse action in violation of the First Amendment.

---

[3] Walker alleges that immediately after firing him, Benware said that Walker "should … never have [been] in possession of his legal documents which he brought to him, Officer Benware, for copying, because only on [Walker's] days off [could Walker] have his personal legal materials in the Law Library." App'x 110.

10

Walker argues that the district court failed to consider Senecal's actions as a course of conduct that rose to the level of an adverse action. We agree that destroying Walker's amended complaint, threatening him, and having two officers attack him the next day—when taken together—plausibly qualify as an adverse action. And Walker has identified a genuine dispute about whether that conduct was causally related to his protected speech. The district court therefore erred in concluding that those allegations were insufficient to survive summary judgment. The district court did not err in dismissing Walker's claims that relied on other allegations.

**1**

The district court rejected all but two of Walker's allegations against Senecal at the motion to dismiss stage, concluding that Walker had failed to establish the second element of a First Amendment retaliation claim: an adverse action. Walker contends that the district court erred by considering each of his allegations in isolation rather than as a single course of retaliatory conduct. "Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (quoting *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002)). While "incidents that are relatively minor and infrequent will not meet that standard," retaliatory conduct reflecting a "pattern of nearly constant harassment" will do so. *Id.* (quoting *Deters v. Lafuente*, 368 F.3d 185, 189 (2d Cir. 2004)).

At the same time, a district court may exclude some allegations from aggregate consideration. In *Davis*, for example, we approved of the dismissal of allegations deemed "*de minimis*" or conclusory while permitting others involving the same defendants to proceed. 320 F.3d at 353; *see also Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002).

11

Thus, the fact that a plaintiff has alleged some adverse acts does not excuse him from establishing that those acts plausibly had more than a *de minimis* effect. And for an act to be considered part of a single course of conduct, the plaintiff must plausibly allege a nexus to that course of conduct; bare allegations of conspiracy will not suffice. *See, e.g., Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (requiring "a showing of more than the linkage in the prison chain of command").

Applying these principles to this case, we vacate in part and affirm in part the judgment of the district court with respect to Senecal's motion to dismiss. The district court erred by not considering Walker's allegations about the attack by two officers in conjunction with Senecal's threat. Walker alleges that the day after Senecal threatened Walker—warning that if he filed a grievance, he would "end up dead or in the Box"—two officers confronted him in the bathroom. App'x 106. The two officers "slapped [Walker] around, pushed him, roughed him up," and repeated Senecal's threat that if he filed a "grievance complaint against Officer Senecal, [Walker] would be going to the Box or end up dead." *Id.* at 107. The two officers told Walker that their attack showed "how easily [Walker] could get kill[ed] for filing grievances against Officer Senecal." *Id.* at 106-07.

A physical attack by prison officers may qualify as an adverse action, *see Espinal*, 558 F.3d at 129, and Walker plausibly alleges a causal connection between the attack and his protected speech: the officers themselves said they were retaliating against him because of his grievance against Senecal. The follow-up assault makes Senecal's statements more than an empty threat. *Compare Hayes*, 976 F.3d at 274 ("Threats accompanied by some action … surely constitute adverse action."), *with Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005) ("The alleged threats made by [an officer], without any allegation that the [officer] carried through on those threats, did not constitute

12

adverse action."). And it plausibly suggests that Senecal "authorize[d], order[ed], or help[ed]" perpetrate the assault. *See Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014). Therefore, the district court should not have dismissed the allegations.

We have said that a retaliatory pat frisk may also support a claim of First Amendment retaliation. *See Hundley v. Frunzi*, No. 23-581, 2024 WL 3886996 (2d Cir. Aug. 21, 2024). In *Hundley*, however, the frisk allegedly took place inside the plaintiff's cell in violation of protocol. *Id.* at *4 n.2. The extraordinary character of the frisk made a difference because we have held in prior cases that "[a]dditional searches and pat frisks," *Kenlock v. Mele*, No. 22-2799, 2023 WL 8538182, at *3 (2d Cir. Dec. 11, 2023), and "searches of [the plaintiff's] person," *Dorsey*, 468 F. App'x at 27, do not qualify as adverse actions. We need not decide whether the alleged frisks in this case plausibly represented a departure from how such frisks are normally conducted. Regardless of the character of the frisks, Walker fails plausibly to allege a causal relationship between the frisks and his protected speech. Walker's allegations that the frisks were part of Senecal's efforts to "recruit[] other officers to help him carry [out] his hatred for [Walker]" and "abuse [Walker]" are too conclusory to support an inference of causation. App'x 110. And the circumstantial allegations do not show causation. The first alleged search was conducted on March 23, 2018, more than five months after Walker filed his grievance and after Senecal's last alleged retaliatory act. As noted above, while we have "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Espinal*, 558 F.3d at 129 (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)), we generally require something more than temporal proximity to establish retaliatory animus. In this case, the allegedly retaliatory conduct—searches of an inmate—routinely

13

occurs in prison and is "essential to the effective security of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 529 (1984). That makes inferring retaliatory animus from mere temporal proximity all the more difficult.

The allegations here lack the "further factual enhancement" necessary to cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Senecal himself conducted only one of the searches, and he did so more than eight months after Walker filed his grievance. Walker alleges that two of the other searches—conducted by unnamed officers—were prompted by "Senecal's unwritten rule which prohibited [Walker] from eating on the A Side of the Messhall." App'x 110. These allegations do not allow a plausible inference that the searches were causally related to Walker's protected speech. The district court did not err in concluding that the allegations did not support a plausible claim.

We further conclude that the district court did not err in rejecting the remaining allegations at the motion to dismiss stage. First, the district court correctly rejected as *de minimis* Walker's allegations related to Senecal's interfering with his access to the mess hall, preventing him from eating in the "special diet" area, and asking him to show his Diet Card. Walker does not directly dispute that ruling on appeal. Second, the district court correctly rejected Walker's allegation related to Senecal's threatened recreation ban. The alleged threat occurred on June 29, 2018—more than nine months after Walker's grievance against Senecal—and did not occur as part of a single course of conduct. As the magistrate judge concluded, these "alleged threats were vague and lacked the specificity and seriousness 'to deter an inmate from exercising his First Amendment rights.'" *Walker v. Senecal*, No. 20-CV-82, 2021 WL 3813081, at *8 (N.D.N.Y. July 19, 2021), *report and recommendation adopted*, No. 20-

14

CV-82, 2021 WL 3793771 (N.D.N.Y. Aug. 26, 2021). Walker does not allege that Senecal followed through on the threat, and whether "[t]hreats [were] accompanied by some action" informs the determination of whether there was an adverse action. *Hayes*, 976 F.3d at 274.

**2**

The district court permitted two of Walker's allegations to proceed to discovery: (1) that Senecal "ripped out the first 18 [p]ages" of his amended complaint, and (2) that Senecal threatened Walker that he would "end up dead or in the Box" if "he []ever put his name on any grievance concerning him ripping out the pages." App'x 105-06. As noted above, the district court did not consider the threat in conjunction with the alleged bathroom attack on Walker, and it is unclear whether Walker was entitled to pursue discovery with respect to the attack. The district court ultimately granted Senecal's motion for summary judgment, concluding that neither the destruction of the amended complaint nor the threat—each analyzed in isolation—was sufficiently adverse. The district court did not reach the issue of causation or that of whether Senecal was entitled to qualified immunity.

We conclude that the district court erred in failing to consider the aggregate deterrent effect of Senecal's purported conduct in assessing whether an adverse action occurred. [4] Taken together,

---

[4] To be sure, Senecal's threat and his destruction of legal materials related to different forms of protected speech: filing a complaint and writing a grievance. But a court may still consider the aggregate deterrent effect because the two instances of protected speech were intertwined. An inmate's ability to file a grievance to seek redress for an officer's destruction of his legal materials relates to the deterrent effect of the destruction. Absent the ability to seek redress, a plaintiff may assume that the destruction of legal materials could be repeated, and inmates will accordingly "believe

15

Walker's allegations suffice to establish at least a genuine dispute of material fact as to whether the effect was sufficiently adverse. Accordingly, the district court should not have granted Senecal's motion for summary judgment.

We need not decide here whether the act of destroying the amended complaint, standing alone, would be sufficiently adverse. But we note that other circuits have concluded that destruction or confiscation of legal materials may amount to an adverse action.[5] The Sixth Circuit, for example, has reasoned that destruction of legal materials involves not only "'potential' interference with protected speech" but a direct impediment to the plaintiff's engaging in that speech. *Richards*, 96 F.4th at 918 (quoting *Bell*, 308 F.3d at 605). Such an impediment "may … cause[] others to believe that any efforts they might expend in preparing legal claims would be wasted since any materials they prepared could easily be destroyed or confiscated." *Id.* (quoting *Bell*, 308 F.3d at 605). This reasoning suggests that destruction of legal materials is not analogous to destruction of other forms of personal property.

The deterrent effect of an officer's destruction of legal materials will necessarily vary with the "specific circumstances" in which it occurs. *Hayes*, 976 F.3d at 272. Here, those circumstances included (1) a subsequent threat of death or confinement to the Special

---

that any efforts they might expend in preparing legal claims would be wasted." *Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002). In other words, if an officer not only destroys an inmate's legal materials but also threatens to kill that inmate if he files a grievance about the destruction, the inmate is more likely to be deterred from reproducing such legal materials.

[5] *See Richards v. Perttu*, 96 F.4th 911, 918 (6th Cir. 2024); *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).

Housing Unit, and (2) a physical assault in which officers purported to emphasize the seriousness of the threat. We conclude that the combination of the destruction of legal materials, the subsequent threat, and the follow-on assault by two officers who repeated the threat suffices to establish a genuine question as to whether "a similarly situated individual of ordinary firmness" would have been deterred "from exercising his or her constitutional rights." *Hayes*, 976 F.3d at 272 (quoting *Davis*, 320 F.3d at 353).

We additionally conclude that Walker has identified a genuine dispute as to whether the destruction of legal materials, Senecal's threat, and the bathroom attack were causally related to his protected speech. Walker alleges that Senecal ripped out the eighteen pages from his amended complaint immediately after reading it. He further claimed in his deposition testimony that Senecal "told [him] that" "[h]e took [the eighteen pages] because [Walker] was challenging the prison condition[s] and [he] ha[d] the Commissioner[']s name on it and the Superintendent[']s name." App'x 241. With respect to the threat, Walker alleges that immediately after he informed Senecal that he would be filing a grievance against him for ripping out the pages, Senecal responded that "if he []ever put his name on any grievance concerning him ripping out the pages, he would make sure that [Walker] end[ed] up dead or in the Box." *Id.* at 106. Two officers repeated that exact threat the next day while attacking Walker in the bathroom, showing him "how easily he could get kill[ed] for filing grievances against Officer Senecal." *Id.* at 106-07. These allegations establish a genuine dispute as to causation.

Senecal argues in the alternative that he is entitled to qualified immunity. Because the district court did not reach this issue, we leave it for the district court to do so in the first instance. *See Tanvir v. Tanzin*, 894 F.3d 449, 472 (2d Cir. 2018) ("[I]t is our practice in this Circuit

when a district court fails to address the qualified immunity defense to remand for such a ruling.") (quoting *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988)); *see also Havens v. James*, 76 F.4th 103, 123 (2d Cir. 2023) ("We are 'a court of review, not of first view.'") (quoting *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 610 (2013)).

## II

Walker argues that the district court erred in dismissing his due process and equal protection claims with prejudice pursuant to 28 U.S.C. § 1915A(b). In his complaint, Walker sought declaratory and injunctive relief against "Governor Cuomo, [Attorney General] James, and each of the Judges of the New York Court of Appeals, for their individual and collective failure and refusal to provide [Walker] with a forum with full and fair opportunity to establish his innocence, and to obtain his release from the fundamentally unjust conviction and unlawful imprisonment." App'x 120. The district court reasoned that those claims were not cognizable under § 1983 but could be brought only in a habeas action "[i]nsofar as [Walker] seeks declaratory or injunctive relief related to 'the very fact or duration of his physical imprisonment.'" *Walker v. Cuomo*, No. 20-CV-82, 2020 WL 8483820, at *13 (N.D.N.Y. Mar. 31, 2020) (alteration omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Walker argues that because he sought only a "full and fair opportunity" to litigate his claimed innocence—not an actual determination of innocence—his claims were cognizable under § 1983.

The district court clarified in a subsequent order that it had dismissed with prejudice "only Walker's Section 1983 claims that sought monetary relief against the named defendants in their official capacities, and declaratory and injunctive relief related to 'the very fact or duration of his physical imprisonment.'" *Walker v. Senecal*, No. 20-CV-82, 2020 WL 4590680, at *2 (N.D.N.Y. July 30, 2020)

(alteration omitted) (quoting *Walker*, 2020 WL 8483820, at *13). To the extent that Walker could allege claims seeking procedural protections that did not challenge his imprisonment, the district court allowed him to file an amended complaint, which he did not do. We see no error in this aspect of the judgment that warrants reversal.

## CONCLUSION

We conclude that Walker has identified a genuine dispute of material fact as to whether the destruction of his legal materials, Senecal's threat, and the subsequent bathroom attack—taken together—amounted to an adverse action that was causally related to his protected speech. To the extent that the district court granted summary judgment on this claim, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion. We affirm the judgment in all other respects.